

DA 10-0341

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2011 MT 84A

IN THE MATTER OF THE ESTATE OF
CECELIA JUSTENE HARMON,

      Deceased.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDP 09-074
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Steven T. Potts; Steven T. Potts, PLLC; Great Falls, Montana

      For Appellee:

            Joseph M. Sullivan; Deschenes & Sullivan; Great Falls, Montana

Submitted on Briefs:  February 9, 2011

Decided:  April 20, 2011

Amended:  May 25, 2011

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Appellant Dennis Waitt (Waitt) appeals from the order of the Eighth Judicial District Court granting summary judgment in favor of the Estate's Personal Representative, Roger Harmon (Harmon). We affirm the District Court and remand for further proceedings.

¶2 We consider the following issues on appeal:

¶3 *1. Whether the District Court erred in granting summary judgment in favor of Harmon.*

¶4 *2. Whether the District Court erred in denying Waitt's motion to vacate, alter or amend.*

¶5 *3. Whether the District Court erred in denying Waitt's Rule 56(f) motion.*

¶6 *4. Whether Harmon is entitled to attorney's fees and costs.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶7 This case concerns two competing wills made slightly over one month apart near the end of the decedent's life. The District Court granted Harmon's motion for summary judgment in favor of the probate of a will executed by the decedent, Cecelia Harmon (Cecelia), on January 31, 2009 (the "January Will"). The court dismissed Waitt's formal petition to probate a handwritten document Waitt claims is a valid holographic will executed by Cecelia in December 2008, and denied Waitt's motion to vacate, alter or amend the order granting summary judgment in favor of Harmon.

¶8 Cecelia's first will was executed in 1976. This initial will left the entirety of her estate to her then-husband should he survive her, and to her adopted son Harmon should

2

her husband predecease her. In 2008, Cecelia suffered a stroke and Waitt became her caregiver some time thereafter. On December 23, 2008, Cecelia hand wrote the document that Waitt contends is a valid holographic will (the "Holographic Will"). The document did not explicitly revoke the 1976 will, but left several pieces of property to Waitt and provided that Cecelia's tenant Kermit Knudson (Knudson) would have the option to purchase the property he had long rented at a fraction of its appraised value.

¶9 In January 2009, Cecelia was hospitalized with an illness that was later determined to be pancreatic cancer. She was released several weeks later. On January 31, Cecelia executed a self-proved will at her home, in the presence of her attorney, Joseph Sullivan (Sullivan), two witnesses from Sullivan's office, Harmon, and Harmon's family. This will explicitly revoked all prior wills, including the 1976 Will and the Holographic Will, and left all property to Harmon.

¶10 Cecelia made both Harmon and Sullivan aware of her desires with respect to Waitt and Knudson. Sullivan's affidavit stated he discussed with Cecelia the January Will's omission of explicit bequests to Waitt and specifically offered to reinstate those bequests, but Cecelia confirmed her desire that Harmon simply carry out her wishes.

¶11 Cecelia died on March 29, 2009. The January Will was informally admitted to probate on April 8. Harmon was appointed Personal Representative of the Estate. On September 2, 2009, Harmon filed a motion seeking court approval of his proposed partial distribution of the estate and sale of real property. The District Court entered an order approving the proposed distributions shortly thereafter. With that approval, Harmon facilitated the transfer of a home and two vehicles to Waitt and the discounted purchase

of the rental home by Knudson. Waitt received less property than the Holographic Will had left him, however, and Knudson purchased the home at a substantially lesser discount than was provided for in the Holographic Will.

¶12 On November 20, 2009, Waitt filed a motion seeking his own appointment as Personal Representative and formal probate of the Holographic Will. Harmon filed a motion for summary judgment on November 27, 2009, seeking confirmation of the January Will. The District Court held a hearing on Harmon's motion on March 23, 2010. Waitt filed a motion and supporting documents on the day of trial seeking a continuance for additional discovery pursuant to M. R. Civ. P. 56(f). After oral argument, the court denied Waitt's Rule 56(f) motion and granted summary judgment to Harmon in open court. The court subsequently issued a written order on March 26 incorporating its oral decision.

¶13 Waitt filed a motion to vacate, alter or amend on April 16, 2010. The District Court took no action within 60 days, and the motion was deemed denied pursuant to M. R. Civ. P. 52(d). Waitt timely appealed.

## STANDARD OF REVIEW

¶14 We review de novo a district court's grant of summary judgment, using the same standards applied by the district court under M. R. Civ. P. 56. *Rich v. Ellingson*, 2007 MT 346, ¶ 12, 340 Mont. 285, 174 P.3d 491. The moving party has the burden of establishing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* Once the moving party has met this burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a

4

genuine issue of material fact. *Apple Park, L.L.C. v. Apple Park Condos., L.L.C.*, 2008 MT 284, ¶ 11, 345 Mont. 359, 192 P.3d 232. Reliance upon "conclusory statements" lacking specific factual support is not sufficient to raise a genuine issue of material fact. *PPL Mont., L.L.C. v. State*, 2010 MT 64, ¶ 84, 355 Mont. 402, 229 P.3d 421 (citing *Smith v. Burlington N. and Santa Fe Ry. Co.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639). We review evidentiary rulings made in the context of a summary judgment proceeding de novo, in order to determine whether the evidentiary requirements for summary judgment have been satisfied. *PPL Mont.*, ¶ 85.

¶15 We review the denial of a motion to vacate, alter or amend for an abuse of discretion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451. We review a district court's conclusions of law to determine whether they are correct. *Stanton v. Wells Fargo Bank Mont., N.A.*, 2007 MT 22, ¶ 17, 335 Mont. 384, 152 P.3d 115.

## DISCUSSION

¶16 *1. Whether the District Court erred in granting summary judgment in favor of Harmon.*

¶17 Waitt raises numerous assertions of error regarding the District Court's grant of summary judgment. He argues that Harmon's motion was improperly granted due to the existence of genuine issues of material fact, the erroneous exclusion of portions of affidavit testimony submitted by Waitt, and the court's failure to analyze the elements of undue influence under § 28-2-407, MCA. Because the correctness of the District Court's

5

ruling on summary judgment depends on the resolution of these sub-issues, we will address each in turn.

¶18 *Existence of genuine issues of material fact*.

¶19 Under § 72-3-310, MCA, the proponent of a will has the burden of establishing that it has been duly executed under the criteria set out in § 72-2-522(1), MCA. Where a will has been simultaneously executed, attested and acknowledged by the testator and witnesses, in the manner set out in § 72-2-524, MCA, it is self-proved and may be admitted to probate without testimony of the attesting witnesses. Section 72-3-309(2), MCA. Where a duly executed will is admitted to probate, a further presumption exists that the testator was competent and of sound mind. *In re Est. of Brooks*, 279 Mont. 516, 521, 927 P.2d 1024, 1027 (1996). Furthermore, the party contesting a will bears the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation, and bears the ultimate burden of persuasion on these elements. Section 72-3-310, MCA.

¶20 Waitt's sole contention is that the January Will was a result of undue influence. Section 28-2-407, MCA, defines undue influence as:

> (1) the use by one in whom a confidence is reposed by another person or who holds a real or apparent authority over the other person of the confidence or authority for the purpose of obtaining an unfair advantage over the other person;
> (2) taking an unfair advantage of another person's weakness of mind; or
> (3) taking a grossly oppressive and unfair advantage of another person's necessities or distress.

To determine whether the statutory requirements have been met, a court may consider: (1) any confidential relationship between the person alleged to be exercising

6

undue influence and the donor; (2) the physical condition of the donor as it may affect his or her ability to withstand influence; (3) the mental condition of the donor as it may affect his or her ability to withstand influence; (4) the unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to influence; and (5) the demands and importunities as they may affect the donor, taking into account the time, place and surrounding circumstances. *In re Est. of Harms*, 2006 MT 320, ¶ 21, 335 Mont. 66, 149 P.3d 557 (citations omitted). These criteria are nonexclusive considerations available to guide the court in its application of statutory requirements, and may or may not be present in any given undue influence case. *Id.* at ¶ 21 (citing *In re Est. of Bradshaw*, 2001 MT 92, ¶ 16, 305 Mont. 178, 24 P.3d 211; *Mowrer v. Eddie*, 1999 MT 73, ¶ 31, 294 Mont. 35, 979 P.2d 156).

¶21 We also have explained that the mere opportunity to exercise undue influence on the testator is not sufficient to prove undue influence. We consider opportunity together with the alleged acts of influence to determine if the acts amount to undue influence. *In re Est. of Lien*, 270 Mont. 295, 304, 892 P.2d 530, 535 (1995). To meet his burden and defeat summary judgment, therefore, Waitt was required to present admissible evidence of specific acts of undue influence sufficient to raise a genuine issue of material fact.

¶22 General allegations of poor health are not sufficient to show undue influence. Rather, evidence must be presented that proves undue influence actually was "exercised upon the mind of the testator directly to procure the execution of the will. Mere suspicion that undue influence may have or could have been brought to bear is not

sufficient." *In re Est. of Lightfield*, 2009 MT 244, ¶ 33, 351 Mont. 426, 213 P.3d 468 (quoting *In re Est. of Wittman*, 2001 MT 109, ¶ 21, 305 Mont. 290, 27 P.3d 35).

¶23 *Exclusion of affidavit testimony.*

¶24 As a threshold matter, whether Waitt raised a genuine issue of material fact is largely dependent on the admissibility of testimony he submitted by affidavit. Waitt contends the court erred in excluding portions of the affidavits critical to his claims. These affidavits, purporting to be declarations of the decedent evidencing testamentary intent, constitute the primary evidence offered by Waitt as to the presence of undue influence, the gravamen of his claim that the January Will is invalid. Waitt's affidavit states, "Cecelia told me that her adopted son Roger was very greedy, that I should hide the [Holographic Will] from him, because he would go through all of her papers at the house, and that I would need to bring [the Holographic Will] out because of Roger's greed," and that Cecelia "said that she had been 'hoodwinked'" after the execution of the January Will. Knudson's affidavit states that Cecelia "told me that she was going to change this 'damned' Will to the way she wanted it—not the way Roger Harmon wanted it," and that "she told me that Dennis Waitt had been more of a son to her than Roger Harmon had been." Similarly, Emma White's (White) affidavit states that "Cecelia said she wanted Dennis Waitt to have the house he was living in and the home next door." In sum, the affidavits contain purported statements of the decedent, Cecelia, to show her intent to give property to Waitt and to allow Knudson to purchase his rental home at discount, and about Harmon's allegedly heavy-handed and self-interested treatment of Cecelia.

8

¶25 Supporting and opposing affidavits in the summary judgment context are to "be made on personal knowledge," and "shall set forth facts as would be admissible in evidence . . . ." M. R. Civ. P. 56(e). Rules 801 and 802 of the Montana Rules of Evidence provide that statements, other than those made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted, are inadmissible unless an exception to the hearsay rule applies. Thus, Rule 56(e) makes clear that statements in affidavits made without personal knowledge, or based on hearsay, are not admissible and cannot be considered on summary judgment. *PPL Mont.*, ¶ 92. The statements in the affidavits in the present case are those of an out-of-court declarant (Cecelia) offered to prove the truth of the matter asserted therein (that the statements reflected Cecelia's true testamentary intent). As such, the statements are not admissible under the prohibition against hearsay evidence, and properly were disregarded by the District Court, unless they fit into an exception to the rule. Waitt advances several such exceptions in defense of the excluded statements. Harmon disagrees that any of these exceptions applies.

¶26 After careful consideration of each of Waitt's contentions, we affirm the District Court's exclusion of the affidavit testimony. None of the exceptions to the hearsay rule advanced by Waitt compels a conclusion that the District Court erred in excluding the testimony.

¶27 Waitt first asserts the "transaction rule" codified in § 26-1-103, MCA, as support for admissibility of the excluded statements in his own affidavit (Aff. Waitt ¶¶ 4, 6, 8 (Feb. 8, 2010)). The statute provides that "[w]here the declaration, act, or omission

9

forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." He further argues that Cecelia's alleged statement that she was "hoodwinked" (Aff. Waitt at ¶ 8) is admissible as an excited utterance, under M. R. Evid. 803(2); is admissible to show Cecelia's state of mind, under M. R. Evid. 803(3), and is admissible under the "catch-all" provision of M. R. Evid. 803(24). Waitt cites *In re Est. of Silver*, 2000 MT 127, ¶ 20, 299 Mont. 506, 1 P.3d 358, *Thompson v. Steinkamp*, 120 Mont. 475, 481, 187 P.2d 1018, 1021 (1947), and *Anderson v. Baker*, 196 Mont. 494, 500-01, 641 P.2d 1035, 1038 (1982), in support of the statements' admissibility under Rule 803(3) and (24). Lastly, Waitt argues that the excluded statements in his affidavit are admissible pursuant to M. R. Evid. 804(b)(5), citing *Hobbs v. Pac. Hide & Fur Depot*, 236 Mont. 503, 513, 771 P.2d 125, 131 (1989). Waitt makes similar arguments as to the admissibility of testimony in Knudson's and White's affidavits (Aff. Knudson ¶¶ 3-5 (Mar. 11, 2010); Aff. White ¶¶ 6-7 (Mar. 23, 2010)): that the statements therein are admissible as evidencing a then-existing mental state under 803(3) and the rules set out in *Silver*, *Thompson*, and *Anderson*; and under M. R. Evid. 804(b)(5).

¶28 Waitt cites no supporting authority for his position that the "transaction rule" in § 26-1-103, MCA, applies in the present context, and offers no legal analysis placing the statements within the ambit of the rule. It is unclear how the statements could be considered part of the "transaction" of the January Will signing. Cecelia's purported explanations some time after the signing of the January Will were not part of the transaction of the will's execution. It is not our obligation to conduct legal research or

develop legal analysis supporting a party's position. M. R. App. P. 12(f); *In re Est. of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339. In the absence of authority to the contrary, we decline to further consider the merits of Waitt's contention.

¶29 Second, Waitt claims Cecelia's statement that she was "hoodwinked" by the January Will signing is admissible as an excited utterance under M. R. Evid. 803(2). Waitt's affidavit recounts his observation that on the night after the January Will signing, Cecelia was "very upset," and that she said "she had been hoodwinked." Harmon disputes the existence of any "startling event or condition" as required by the rule. While Waitt suggests the signing of the January Will could constitute such an event, he had no personal knowledge of the event and Harmon and Sullivan vigorously disputed that Cecelia appeared to be under any undue stress.

¶30 Furthermore, the signing occurred numerous hours prior to the alleged statement. Case law suggests a more demanding standard under the rule for excitement and closeness in time. *See e.g. State v. Norgaard*, 201 Mont. 165, 176, 653 P.2d 483, 488 (1982) (upholding a district court's conclusion that the excited utterance rule should not apply to a statement made one hour after a verbal argument); *State v. Swazio*, 173 Mont. 440, 443-44, 568 P.2d 124, 126 (1977) (holding that a statement made by a witness to a shooting "an hour or two" after the incident was not an excited utterance, as it was not made "while the speaker was laboring under excitement and before he had to time to reflect"); *Sullivan v. Metro. Life Ins. Co.*, 96 Mont. 254, 268-69, 29 P.2d 1046, 1049-50 (1934) (citing cases denying the admissibility of statements made "ten to thirty minutes," "thirty to forty minutes," and "fifteen to thirty minutes" after the exciting events). Cases

11

admitting statements made longer than a few minutes after the incident have involved severe personal trauma, such as domestic abuse or rape. *See e.g. State v. Mizenko*, 2006 MT 11, ¶ 33, 330 Mont. 299, 127 P.3d 458; *State v. Cameron*, 2005 MT 32, ¶ 36, 326 Mont. 51, 106 P.3d 1189. We therefore conclude the District Court did not err in refusing to admit the statement as an excited utterance.

¶31 Waitt also contends that Cecelia's "hoodwinked" statement is admissible under M. R. Evid. 803(3) as reflecting her then-existing state of mind shortly after she signed the January Will. Waitt provides no supporting analysis besides his conclusory statement that the rule applies. The rule specifically excludes any "statement of memory or belief to prove the fact remembered or believed," lest the exception swallow the rule. As Waitt offers the statement to prove the fact believed—that Cecelia was "hoodwinked"—the rule is not applicable.

¶32 The federal version of Rule 803(3) prohibits statements of memory or belief made to prove the fact remembered or believed *unless* the statement relates to the "execution, revocation, identification, or terms of [the] declarant's will." F. R. Evid. 803(3). The Commission Comments to the rule make clear that Montana's rejection of the federal exception was intentional and based on its inconsistency with Montana law. The Comments explain, "Montana case law holds the declarations of the testator are not admissible as to the existence or revocation of the will and the testator's attitude toward the contestee of the will." Commn. Comments, M. R. Evid. 803(3) (citing *In re Miller's Est.*, 71 Mont. 330, 341, 229 P. 851 (1924); *In re Colbert's Est.*, 31 Mont. 461, 471,

12

78 P. 971 (1904)). The District Court properly refused admission of the statement under M. R. Evid. 803(3).

¶33 Waitt next argues that all of the excluded statements are admissible because they are reflective of Cecelia's intent with respect to her will, citing *Silver*, *Thompson*, and *Anderson*. Following the rule of these cases, Waitt assumes Cecelia's intent is a material element of the dispute over whether the will was signed under undue influence, and therefore, declarations she made indicating the intent with which she performed the acts relating to the wills are admissible. Waitt also cites M. R. Evid. 803(24), the "catch-all" hearsay exception allowing statements "having comparable circumstantial guarantees of trustworthiness" to the listed exceptions in Rule 803, in support of this contention. We conclude for the reasons that follow that the cases cited by Waitt do not compel the resolution he suggests.

¶34 In both *Anderson* and *Silver*, the Court explicitly pinned its holding on the fact the agreements in question were standard form documents governing ownership of a joint bank account and safety deposit box, respectively. *Anderson*, 196 Mont. at 500-01, 641 P.2d at 1038-39; *Silver*, ¶¶ 19-21 (quoting *Anderson*). We held in each case that it was appropriate to consider extrinsic evidence, given that the bank's form document was drafted largely to protect the institution and was not likely to represent the true understanding of the parties. *Anderson* at 500, 641 P.2d at 1038; *Silver*, ¶¶ 19-21. In contrast, a duly executed will admitted to probate presumptively reflects the true intentions of the testator, since in such circumstances the testator is presumed competent and of sound mind and a contestant of the will bears the burden of proving that the will

13

does not reflect the testator's intent. Section 72-3-310, MCA; *Est. of Brooks*, 279 Mont. at 521, 927 P.2d at 1027. It is logical that the law treats wills differently from instruments designed by banks: conceptually, a will is designed with the sole purpose of expressing and carrying out the testator's intent, whereas a deposit account agreement is drafted with numerous unrelated purposes in mind, as noted in *Anderson* and *Silver*.

¶35 Nor does *Thompson* compel the resolution Waitt suggests. The plaintiff in *Thompson* gave the defendant a large sum of money with which to purchase a home. The parties disputed whether the plaintiff intended to make an outright gift of the money, or whether he gave the money so that the defendant could purchase and hold the house on his behalf. We allowed evidence of statements made by the plaintiff regarding his intent in giving the money to the defendant, reasoning that "[w]hen intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving." *Thompson*, 120 Mont. at 481, 187 P.2d at 1021 (quoting *Whitlow v. Durst*, 127 P.2d 530, 531 (Cal. 1942)).

¶36 *Thompson* was decided before adoption of the Montana Rules of Evidence, and is distinguishable in any event because intent is not a material element of a disputed fact in the case before us. As noted above, the only ground specified in § 72-3-310, MCA, upon which Waitt contests Cecelia's will is undue influence. Thus, the "disputed facts" here are those that would demonstrate a genuine issue of fact as to specific acts of undue influence. In light of this framework, it is clear that *Thompson* does not render the

14

excluded statements admissible. Cecelia's intentions when she signed the January Will, or her alleged feelings about Harmon's greed, do not tend to prove or disprove any of the elements of undue influence. Therefore, we cannot conclude the District Court erred in declining to apply the holding in *Thompson* to the case at bar.

¶37 Finally, Waitt claims the statements are admissible under M. R. Evid. 804(b)(5). This rule is a "catch-all" provision when the declarant is unavailable, and allows admission of a statement that has "comparable circumstantial guarantees of trustworthiness" to the four enumerated exceptions in Rule 804(b): former testimony, statements made under belief of impending death, statements against interest, and statements of personal or family history. There are no such circumstantial guarantees of trustworthiness associated with the statements in the affidavits submitted by Waitt. Given the often highly contentious nature of estate distribution, the opposite is true. Montana law has historically been hostile to the admissibility of out-of-court statements made by the testator regarding his or her testamentary intentions when a valid will exists and the testator's mental capacity is not at issue. *In re Colbert's Est.*, 31 Mont. at 472-73, 78 P. at 974-75 (quoting *Throckmorton v. Holt*, 180 U.S. 552, 573-74, 21 S. Ct. 474, 482-83 (1901)). The District Court did not err in concluding that Rule 804(b)(5) was inapplicable.

¶38 For the above reasons, we conclude the District Court did not err in excluding the above-referenced portions of the affidavit testimony of Waitt, Knudson, and White.

15

¶39 *Application of admissible evidence to the summary judgment standard.*

¶40 In its summary judgment ruling, the District Court considered the following admitted evidence: Waitt's affidavit testimony that, in his estimation as a medical technician, Cecelia was in poor physical condition and unable to withstand influence on the date of the January Will signing (Aff. Waitt at ¶¶ 7, 9), and Knudson's affidavit testimony that Cecelia was in poor physical condition (Aff. Knudson at ¶ 2).

¶41 The District Court concluded that this evidence was insufficient to raise a genuine issue of material fact. The court noted that no assertions of reduced mental capacity were made and that statements relating to her poor health in general did not in any way demonstrate that Cecelia was deprived of her ability to withstand undue influence.

¶42 The court also concluded that no unnatural disposition had occurred as Cecelia had left her estate to her only son, consistent with her long-standing testamentary plan. The court noted it would be far *more* unnatural to give a substantial portion of an estate to a non-relative caretaker, regardless of the disposition in the Holographic Will.

¶43 The court finally concluded that Waitt failed to rebut any of the facts establishing the voluntary, knowing, and willing execution of the January Will. The court also noted, as further evidence of this interpretation, that Sullivan discussed with Cecelia that she could change the terms of the will at any time, but that she elected not to do so in the weeks preceding her death.

¶44 We agree with the District Court that in the absence of the excluded testimony, Waitt did not present sufficient evidence to demonstrate the existence of a genuine issue of material fact on any element of undue influence, even when considered in the light

16

most favorable to Waitt. Montana law does not consider illness alone as evidence of reduced ability to withstand influence, or the existence of a confidential relationship, without more, as proof of undue influence. *Stanton v. Wells Fargo Bank Mont., N.A.*, 2007 MT 22, ¶¶ 25-26, 335 Mont. 384, 152 P.3d 115 (concluding that a confidential relationship existed, but stating "[t]he mere opportunity to exercise undue influence on the testator is not sufficient, however, to prove undue influence," and distinguishing between weakened physical or mental condition and the ability to withstand influence). Evidence of specific acts of undue influence is required, and Waitt offered no such evidence. *Est. of Lien*, 270 Mont. at 304, 892 P.2d at 535.

¶45 *Analysis of undue influence under § 28-2-407, MCA.*

¶46 Waitt's final contention regarding the motion for summary judgment is that the District Court erred in not analyzing each of the statutory elements and non-statutory factors for determining undue influence. We conclude that the District Court correctly analyzed the evidence presented to it, and any alleged failure to consider particular elements was the logical result of a lack of admissible evidence being presented on that element. As we have noted, the unique factual circumstances of each case give the court discretion to determine which of the non-statutory factors bears relevance to its determination. *Harms*, ¶ 21; *Bradshaw*, ¶ 16.

¶47 Waitt argues the District Court failed to analyze § 28-2-407(1), MCA, which provides that undue influence consists of "the use by one in whom a confidence is reposed by another person or who holds a real or apparent authority over the other person of the confidence or authority for the purpose of obtaining an unfair advantage over the

17

other person." As the District Court observed, and as the statute reflects, the mere existence of a confidential relationship is insufficient to show that the relationship was *used* for the purpose of obtaining an unfair advantage. Implicit in the District Court's statement is the conclusion that Waitt failed to present evidence sufficient to raise a genuine issue of material fact showing Harmon used his allegedly confidential relationship with Cecelia for the purpose of obtaining an unfair advantage.

¶48 Because the District Court's evidentiary rulings were correct, Waitt failed to present any genuine issues of fact, and the court correctly analyzed Waitt's claim of undue influence, we conclude that summary judgment was properly granted to Harmon.

¶49 *2. Whether the District Court erred in denying Waitt's motion to vacate, alter or amend.*

¶50 Waitt filed a motion to vacate, alter or amend on two distinct bases: Harmon's failure to comply with discovery requests and the District Court's consideration of Harmon's affidavits. We address these bases in turn.

¶51 First, citing *Richardson v. State*, 2006 MT 43, ¶¶ 56, 63, 331 Mont. 231, 130 P.3d 634, Waitt argues the court's summary judgment order should be vacated for Harmon's failure to comply with discovery requests. He recounts a litany of alleged abuses. In *Richardson*, we reversed a district court's order denying a motion to amend a final judgment because of numerous discovery violations. *Id.* at ¶ 69. *Richardson* involved abuses of the discovery process we characterized as "blatant and systematic" and concluded were sufficiently egregious to warrant a default judgment. *Id.* at ¶ 65.

18

¶52 No comparable facts are present here. Waitt took no action on Harmon's discovery responses for months until a flurry of activity immediately before trial, and first raised objections to Harmon's discovery responses in his Rule 56(f) motion to continue discovery on the morning of trial. Objections with any specificity were first included in Waitt's motion to vacate, alter or amend. While Waitt alleges on appeal that Harmon avoided producing relevant information in response to discovery requests, information provided was incomplete, and responses were not properly amended to reflect information in the affidavits, these points strike us as plausible grounds for requesting trial court involvement during the discovery process, not grounds for this Court to vacate the District Court's order as in *Richardson*. The trial court is "in the best position to determine both whether the party in question has disregarded the opponent's rights, and which sanctions are most appropriate." *Id.* at ¶ 21. We review a district court's decisions regarding the discovery process for abuse of discretion. *Id.* (citing *Est. of Nielsen v. Pardis*, 265 Mont. 470, 478, 878 P.2d 234, 238 (1994)).

¶53 We conclude the District Court did not abuse its discretion in denying Waitt's motion based on alleged discovery abuses. The court took a dim view of Waitt's contentions that Harmon's responses to discovery were inadequate in light of the absence of any request to involve the court in the discovery process in the four months after Harmon's motion for summary judgment was filed. Waitt's inactivity further distinguishes *Richardson*, where the plaintiff diligently pursued the sought discovery responses and the court was heavily involved in the discovery process at the plaintiff's request.

¶54 We next consider Waitt's argument that the court erred in denying his motion on the ground that it erroneously considered Harmon's improperly served affidavits. Waitt cites M. R. Civ. P. 6(d), which provides that affidavits must be served with motions they support, as the basis for this contention. He argues that Harmon failed to serve the affidavits before the hearing, and thus they could not have been considered by the District Court in connection with Harmon's motion for summary judgment. Because Harmon's affidavits could not be considered in conjunction with his motion for summary judgment, Waitt argues, Harmon failed to meet his initial burden and the motion should have been denied.

¶55 Clearly, Harmon's initial attempt to mail the affidavits to Waitt constituted insufficient service of process, as they were sent to the wrong address. It appears Waitt's counsel recently had changed addresses and Harmon either misplaced or was misinformed as to the correct new address. Two critical weaknesses are present in Waitt's claim, however. First, Harmon need not have filed *any* affidavits in support of his motion for summary judgment, and a failure to do so does not render the District Court's granting of the motion reversible error. M. R. Civ. P. 56(b). Second, Harmon relied on statutory protections afforded to self-proved wills such as the January Will, and the sworn statements contained within it, to support his motion and shift the burden to Waitt to demonstrate the absence of a genuine issue of material fact. The burden thus shifted to Waitt without any consideration of statements in the affidavits, and the court's opinion reflects as much. The court's conclusion that Waitt failed to present any evidence raising a genuine issue of material fact was therefore based on the

20

inadmissibility of statements in Waitt's affidavits and his failure to present evidence overcoming the protections afforded duly executed wills admitted to probate. It was not based on statements in Harmon's affidavits.

¶56 While the District Court did mention some information in the affidavits that rebutted Waitt's contentions, Waitt cites no relevant authority for the proposition that the District Court's consideration of the affidavits constitutes reversible error. We are unpersuaded by Waitt's citation of *Ihonvbere v. State Farm Mut. Auto Ins.*, 2009 Tex. App. LEXIS 3870 (Tx. Ct. App. 2009), where the court found reversible error as a result of insufficient service. *Ihonvbere* involved drastically more prejudicial circumstances than the present case, as the insufficient service rendered the defendant unaware of a motion for summary judgment and hearing on the motion at which a default judgment against him was entered. *Id.* at ** 9-13. In contrast, here Waitt knew of the existence of information contained in the affidavits, and the affidavits were not relied on by the court in finding Harmon was entitled to summary judgment.

¶57 The court's ruling was made irrespective of any information contained in Harmon's affidavits that Waitt supposedly would have been better prepared to rebut. We affirm the District Court.

¶58 ***3. Whether the District Court erred in denying Waitt's Rule 56(f) motion.***

¶59 A district court may continue a motion for summary judgment on the basis that an opposing party needs additional discovery. M. R. Civ. P. 56(f); *Hinderman v. Krivor*, 2010 MT 230, ¶ 12, 358 Mont. 111, 244 P.3d 306. Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

¶60 A district court does not abuse its discretion in denying a Rule 56(f) motion if the party moving for additional discovery fails to establish how the proposed discovery will prevent summary judgment. *Hinderman*, ¶ 16 (citing *Rosenthal v. Co. of Madison*, 2007 MT 277, ¶ 38, 339 Mont. 419, 170 P.3d 493). A court need not force a party to undergo more discovery when "[t]he only reason to believe that additional, relevant evidence would materialize . . . is the [plaintiff's] apparent hope of finding a proverbial 'smoking gun.'" *Rosenthal*, ¶ 42 (quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005)).

¶61 We conclude that the District Court did not abuse its discretion in denying Waitt's motion. Nothing in counsel's affidavit explained what additional facts Waitt would obtain through additional discovery that would effectively oppose the motion for summary judgment. Nor did the affidavit explain why Waitt could not present these facts, beyond the general argument that Harmon was evasive in his discovery requests. Waitt thus failed to establish how any additional discovery permitted by the court would have prevented summary judgment. *Hinderman*, ¶ 16.

¶62 ***4. Whether Harmon is entitled to attorney's fees and costs.***

¶63 Lastly, we consider whether Harmon is entitled to attorney's fees and costs. After the District Court's grant of summary judgment, Harmon moved to recover his attorney's fees and costs pursuant to § 72-12-206, MCA, which provides in pertinent part:

22

> **Fees and expenses -- by whom paid.** When the validity or probate of a will is contested through court action, the attorney fees and costs, as provided in 25-10-201, incurred in defending the validity or probate of the will must be paid by the party contesting the validity or probate of the will if the will in probate is confirmed.

Harmon argues he is entitled to fees and costs pursuant to the statutory criteria: he defended the probate of a contested will, and the will was confirmed. Harmon's brief explains that the District Court did not rule on the motion prior to this appeal being filed. Waitt does not respond to Harmon's arguments in his reply brief, implicitly conceding that if he loses this appeal, the statute will operate as Harmon asserts. Before the District Court, Waitt filed a memorandum in opposition to Harmon's motion for fees and costs, arguing the motion was premature pending resolution of the appeal, disputing the amount of fees and costs claimed by Harmon, and arguing that a hearing should be set at which to present evidence of reasonable fees and costs should his appeal not be successful.

¶64 We agree with both parties. Waitt's appeal is now no longer pending, and Harmon has defended a contested will that was later confirmed, entitling him to fees and costs as provided in § 72-12-206, MCA. We will leave the determination of the proper amount of fees and costs to the discretion of the District Court on remand.

¶65 We affirm the District Court's grant of summary judgment and denial of Waitt's post-trial motion to vacate, alter or amend, and remand the issue of attorney's fees and costs under § 72-12-206, MCA, for further proceedings consistent with this opinion.

/S/ BETH BAKER

23

We concur:


/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE