DA 13-0790

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 265A

IN THE MATTER OF:

M.S.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDN-11-128
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Julie Brown; Montana Legal Justice, PLLC; Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; C. Mark Fowler, Appellate
Services Bureau Chief; Helena, Montana

          John Parker, Cascade County Attorney; Matthew W. Robertson, Deputy
County Attorney; Great Falls, Montana

Submitted on Briefs:  August 13, 2014
Decided:   September 30, 2014
Amended:  November 12, 2014

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 G.S. appeals an order of the Eighth Judicial District Court, alleging that the court terminated his parental rights without following the statutory requirements of the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et. seq., and without providing due process. We restate the issue on appeal as follows: *Whether the termination proceedings complied with statutory requirements for proceedings involving an Indian child.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Thirteen-year-old M.S. was removed from her mother's care and placed into emergency protective custody on July 18, 2011, after her mother was arrested for Possession of Dangerous Drugs with Intent to Distribute. M.S.'s father, G.S., has been incarcerated in a federal prison in Arizona since 2009, serving a 480-month sentence with an additional 20 years of supervised release for aggravated sexual abuse. G.S. is an enrolled member of the Northern Cheyenne Tribe (Tribe).

¶4 On July 25, 2011, the Department of Public Health and Human Services (Department) filed a Petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Temporary Legal Custody. Although the Department initially placed M.S. with another family member, by August 2011, M.S. had moved to Billings to live with her grandmother's ex-husband.

¶5 On July 28, 2011, the District Court set a date for a show cause hearing and issued a citation to the mother directing her to appear at the hearing. The Department sent notice of the pending show cause hearing to the Chippewa Cree Tribe, mistakenly

2

believing that M.S. was a member or eligible for membership with that tribe. The Chippewa Cree responded that M.S. was not enrolled or eligible for enrollment with that tribe.

¶6 The District Court held the show cause hearing on December 5, 2011. G.S. did not personally attend, but he had been served and was represented at the hearing by his attorney. Both parents stipulated that M.S. was a Youth in Need of Care. The District Court issued an order on December 21, 2011, adjudicating M.S. a Youth in Need of Care and granting the Department Temporary Legal Custody.

¶7 On July 26, 2012, the Department filed a Petition for Permanent Legal Custody and Termination of Parental Rights for both parents. At the disposition hearing on the petition, G.S., through counsel, informed the court that he was a member of the Northern Cheyenne Tribe. The District Court denied and dismissed the Department's petition without prejudice on the grounds that the petition contained inaccurate information regarding M.S.'s tribal affiliations and granted the Department leave to file a new petition to terminate G.S.'s parental rights.

¶8 On September 12, 2012, the Department sent notice of the proceedings by registered mail to the Northern Cheyenne Tribe in Lame Deer, Montana. The Department filed a Notice of Filing with the court, stating that the Tribe received copies of the Petition for Temporary Legal Custody, Social Worker's Affidavit, Order to Show Cause Hearing, and Tribal Notice. The Tribe filed a notice of intervention acknowledging that M.S. was an Indian child under ICWA and was eligible for enrollment in the tribe. While the Tribe expressed interest in transferring the case to

3

tribal court and provided contact information, the Tribe did not appear at any subsequent hearings.

¶9 On December 4, 2012, the Department filed a modified petition for the termination of G.S.'s parental rights and for permanent legal custody of M.S. The Department asserted a theory of aggravated circumstances under § 41-3-609(1)(d), MCA. A hearing on this petition was held on March 25, 2013. The court determined that a continuance was necessary because the Tribe was not properly notified of the hearing. The termination hearing was rescheduled and held on April 22, 2013. The only indication that the Tribe received notice of the rescheduled hearing was that the court's order indicated that the Tribe was "cc'd" with a copy of the order. At the April 22 hearing, the Department then moved to dismiss its petition and refile for termination solely on the issue of abandonment because it had concluded that, under § 41-3-423(2), MCA, aggravated circumstances are not a ground for termination where the proceeding is subject to ICWA.

¶10 On April 30, 2013, the Department filed a motion to amend the petition to terminate G.S.'s parental rights and for summary judgment. The District Court issued an order granting the Department's motion to amend. Although the Department's motion indicated that a copy was "cc'd" to the Tribe, neither the motion nor the court's subsequent order contained a certificate of service confirming that the documents were served on the Tribe.

¶11 At the Department's request, the District Court issued an order setting a summary judgment hearing for October 21, 2013, on the petition to terminate G.S.'s parental rights.

4

This order indicated that it was sent to the parties by a certificate of mailing signed by the clerk of court. At the hearing, the District Court ordered G.S.'s parental rights terminated and awarded the Department permanent legal custody of M.S. The District Court issued its findings of fact, conclusions of law, and order terminating G.S.'s rights on November 12, 2013. G.S. appeals.

## STANDARD OF REVIEW

¶12 This Court reviews the District Court's decision to terminate parental rights for an abuse of discretion. *In re K.B.*, 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836. "In a case governed by ICWA, we will uphold the district court's termination of parental rights if a reasonable fact-finder could conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child." *In re K.B.*, ¶ 18. We review a district court's application of the law to the facts of the case for correctness. *In re K.B.*, ¶ 18.

## DISCUSSION

¶13 *Whether the termination proceedings complied with statutory requirements for proceedings involving an Indian child.*

¶14 ICWA establishes the minimum federal standards for the removal of an Indian child from her family and the placement of such a child in a foster or adoptive home. M.S. is eligible for enrollment with the Tribe and, under ICWA, M.S. is an Indian child. ICWA must be followed strictly by state courts, to "protect the best interests of Indian children and promote the stability and security of Indian tribes and families." 25 U.S.C. § 1902.

5

¶15　ICWA provides that "any parent or Indian custodian from whose custody such [Indian] child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Section 1912 of ICWA requires:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . . No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . .

25 U.S.C. § 1912(a).

¶16　A recent case decided by this Court involved problems with notice under 25 U.S.C. § 1912(a). *In re K.B.*, ¶¶ 22-25. In that case, the tribe received proper notice of the youth in need of care proceeding by registered mail, but did not receive proper notice of the termination petition and hearing. *In re K.B.*, ¶ 24. Although the termination petition and the court's order setting the termination hearing indicated by notation that copies were "cc'd" to the mother and the tribe, the record did not include an accompanying certificate of service or other documentation that could prove that timely service was accomplished. *In re K.B.*, ¶ 24.

¶17　We held that the notice was insufficient under 25 U.S.C. § 1912(a) because the record did not reflect that the mother and the tribe received notice ten days in advance of the termination hearing. *In re K.B.*, ¶ 25. We reversed the district court's termination

6

order and remanded for a new hearing because the State gave insufficient notice and also because the State did not adequately develop the record with regard to whether it demonstrated "active efforts" under 25 U.S.C. § 1912(d) or whether continued custody of the child by the parent was "likely to result in serious emotional or physical damage to the child" under 25 U.S.C. § 1912(f). *In re K.B.*, ¶ 34.

¶18    The procedure followed in this case with regard to notice was remarkably similar to that in *In re K.B.* After the Department realized its mistake concerning M.S.'s tribal affiliation, the Department properly notified the Tribe by registered mail of the involuntary child custody proceeding. The Tribe promptly filed a notice of intervention. The petition for termination of parental rights filed on April 30, 2013, however, indicates only that it was "cc'd," without any certificate of service. The court's order granting the amendment also did not contain a certificate of service. No other proof of service was filed in the record.

¶19    ICWA requires that "the party seeking the foster care placement of, or termination of parental rights to, an Indian child" first notify the Tribe of "any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved . . . ." 25 U.S.C. § 1912(a). ICWA also provides that "[n]o foster care placement *or termination of parental rights proceeding* shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . ." 25 U.S.C. § 1912(a) (emphasis added). If there is "any question about whether notice had to be given both before the department sought to put the child in foster care and when it sought to terminate parental rights, that question should be

7

resolved in favor of giving notice twice." *People ex rel. S.R.M.*, 153 P.3d 438, 442 (Colo. Ct. App. 2006), *cited in In re K.B.*, ¶ 25.

¶20 Here, while the initial notice to the tribe was adequate, the Tribe was not properly served with notice of the termination of parental rights proceeding. The Department's indication that it "cc'd" the Tribe with its motion to amend the termination petition did not include a certificate of service, and no other proof of service appears in the record. Although the court's order setting the termination hearing was served on the Tribe, that document was styled as an order setting a summary judgment hearing and virtually all of the evidence considered by the court already had been presented in prior hearings. Consistent with *In re K.B.*, ¶¶ 24-25, we conclude that the Department failed to provide adequate evidence of proper notice.[1]

¶21 We do not hold that the State must send notice of termination proceedings to the Tribe by registered mail if, as here, notice of the initial proceedings already has been effected in that manner. Where the Tribe already has intervened in the case, notice of termination will be sufficient if it is given in compliance with the Rules of Civil Procedure governing notice to other parties. Thus, the notice to the Tribe must, at a minimum, comply with M. R. Civ. P. 5; Rule 5 states that all documents listed in Rule 5(a)(1) must be served on every party. Service may be accomplished by "mailing it to the person's last known address—in which event service is complete upon mailing."

---

[1] It is incumbent upon counsel for the Department to ensure that the Tribe receives proper service of the District Court's orders. If an order does not indicate that the court served a copy of the order on the Tribe, the Department should serve the order on the Tribe to guarantee that the Tribe receives a copy, and file a Certificate of Service.

8

M. R. Civ. P. 5(b)(2)(C). If service is made by mail, a certificate of service must be filed. M. R. Civ. P. 5(d)(1). Once a tribe has filed a notice of intervention, it has appeared as a party in the case and is entitled to proper service under this rule. Compliance with Rule 5 ensures that a certificate of service will be filed in the record of the district court. M. R. Civ. P. 5(d). That did not occur here.

¶22 We have held consistently that a district court may protect a child's best interest despite procedural errors that would have no impact upon the result. *In re J.C.*, 2008 MT 127, ¶ 43, 343 Mont. 30, 183 P.3d 22; *In re F.H.*, 266 Mont. 36, 39, 878 P.2d 890, 892 (1994); *In re A.N.*, 2000 MT 35, ¶ 39, 298 Mont. 237, 995 P.2d 427 (2000). We agree with the line of cases holding that ICWA's notice requirements are not jurisdictional and are subject to harmless error review. *In re N.N.E.*, 752 N.W.2d 1, 10 n.3 (Iowa 2008); *In re Christian P.*, 208 Cal. App. 4th 437 (Cal. App. 2d Dist. 2012); *In re G.L.*, 177 Cal. App. 4th 683, 695-96 (Cal. App. 4th Dist. 2009). An error involving notice to a tribe is not ground for reversal unless there is a "reasonable probability that [the appellant] would have obtained a more favorable result in the absence of the error." *In re G.L.*, 177 Cal. App. 4th at 696.

¶23 Despite the Department's failure to provide adequate notice, the record shows that the Tribe was aware of the case but, after evaluating the circumstances, did not assume an active role or interest in participating in the matter. "ICWA recognizes that tribes have a unique interest and ability to provide services in the upbringing of Indian children." *In re C.H.*, 2003 MT 308, ¶ 21, 318 Mont. 208, 79 P.3d 822. The ICWA expert testified, however, that she had "spoken to the Tribe and they said that at this point, there would be

9

turmoil if we removed her from the place that she's at [sic]." The Tribe did not participate in this appeal and G.S. has not provided any evidence that the Tribe intended to actively participate had it properly been notified of the termination hearing. This is not a case where the court ignored a child's Indian ancestry or deprived a tribe of its right to intervene. "It would serve no purpose to require the [District Court] to terminate [G.S.'s] parental rights all over again." *In re N.N.E.*, 752 N.W.2d at 10. Because there is not a reasonable probability that G.S. would have obtained a more favorable result in the absence of the Department's error regarding proper ICWA notice, we hold that the error in this case was harmless.

¶24 G.S. argues next that the Department failed to meet ICWA's "active efforts" requirement. The Department has an obligation to demonstrate active efforts to prevent the breakup of an Indian family:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

25 U.S.C. § 1912(d). "'Active efforts' implies a heightened responsibility compared to passive efforts." *In re D.S.B.*, 2013 MT 112, ¶ 15, 370 Mont. 37, 300 P.3d 702. If the underlying proceeding is a termination of parental rights under § 1912(f), proof of "active efforts" must be satisfactory "beyond a reasonable doubt." *In re G.S.*, 2002 MT 245, ¶ 33, 312 Mont. 108, 59 P.3d 1063.

¶25 As we have noted before, a common sense understanding of "active efforts" "requires only that 'timely affirmative steps be taken to accomplish the goal which

10

Congress has set: to avoid the breakup of Indian families whenever possible by providing services [designed] to remedy problems which might lead to severance of the parent-child relationship.'" *In re G.S.*, ¶ 36 (quoting *Letitia v. Superior Court*, 81 Cal. App. 4th 1009, 1016, 97 Cal. Rptr. 2d 303, 309 (Cal. App. 4th Dist. 2000)). Further, "a parent's incarceration may limit the remedial and rehabilitative services that the State can make available to the parent to prevent the breakup of the Indian family." *In re D.S.B.*, 2013 MT 112, ¶ 15, 370 Mont. 37, 300 P.3d 702. We do not excuse the state's obligation to make active efforts if a parent is incarcerated, but "we will not fault the [Department] if its efforts are curtailed by the parent's own criminal behavior." *In re D.S.B.*, ¶ 15.

¶26 The District Court expressly addressed whether ICWA's heightened standard for active efforts was met, noting that the Department worked with the mother to create a treatment plan and that reunification with the father was a practical impossibility because of G.S.'s long-term incarceration. The Department assisted M.S.'s mother in complying with her court-ordered treatment plan before she consented to the termination of her rights. The Department paid for the mother to visit M.S. in Billings and made efforts to help her locate an appropriate residence. No treatment plan was ordered for G.S. due to his long-term incarceration. The court found that the father had failed to develop and maintain a parental relationship with M.S., and that his incarceration left "virtually no likelihood or prospect that [G.S.] will ever be in a position to parent, or even establish a

parental relationship, as a matter of fact, with the child prior to the time that she turns 18."[2]

¶27 The court concluded that "the [Department] has actively intervened in this matter and endeavored, to the extent practical, under the facts and the law, to effect reunification of the child with either or both parents." The court held as a matter of law that the Department's "efforts to effect reunification are reasonable under State law and they have been active under the federal law within the meaning of the ICWA on the same findings of fact." We hold that a reasonable trier of fact could have concluded that the Department made sufficient active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of this Indian family. Substantial evidence supports the court's finding that G.S. will not be able to parent his daughter at any time before she reaches the age of majority. The District Court did not err in concluding that the Department met ICWA's "active efforts" requirement in this circumstance.

¶28 G.S. asserts that the District Court did not make specific findings of fact required by 25 U.S.C. § 1912(f) that continued custody of the child by the parent was "likely to result in serious emotional or physical damage to the child." The Department presented evidence that the continued parental custody of the children would result in serious

---

[2] The record does not clarify whether G.S. ever had custody of M.S. The record is silent regarding G.S.'s relationship with M.S. prior to his incarceration. We recognize that 25 U.S.C. § 1912(d) does not apply where the "breakup of the Indian family" has long since occurred. *In re J.S.*, 2014 MT 79, ¶ 29, 374 Mont. 329, 321 P.3d 103 (citing *Adoptive Couple v. Baby Girl*, 570 U.S. __, 133 S. Ct. 2552, 2559 (2013)). Although the District Court asked during the April 22, 2013 hearing, before *Baby Girl* was decided, how the ICWA standard for termination applies in a situation where the child was never in the parent's custody, the parties did not dispute that ICWA's active efforts were required. Because this potential issue was not raised, we will not address it in this appeal. *See Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 78, 358 Mont. 474, 247 P.3d 244.

emotional or physical damage to the children. The District Court took judicial notice that G.S. has been convicted of aggravated sexual abuse of another daughter, who was four years old at the time, and that he is serving a term of forty years in prison. The District Court found that, even if the father were to leave prison, continued custody of the child with the father likely would result in serious emotional or physical harm to the child by removing her from her current placement in a stable environment. The District Court made sufficient findings regarding the child's well-being and reasonably concluded that continued custody by G.S. would likely result in "serious emotional or physical damage to the child." *In re K.B.*, ¶ 18.

¶29 Finally, although G.S.'s issue statement alleges a violation of the right to procedural due process, he did not present any due process arguments or develop this allegation in any way and we do not further consider it. M. R. App. P. 12(1)(f); *In re Estate of Harmon*, 2011 MT 84, ¶ 28, 360 Mont. 150, 253 P.3d 821. G.S. does argue that the Department cannot terminate a parent's rights through a summary judgment motion, and that the District Court improperly relied on testimony from prior proceedings. The District Court made specific findings of fact during the April 22 hearing and expressly incorporated those findings, "so as not to waste the time and effort" of the parties and witnesses. The court reasonably sought "to avoid duplication" of the testimony presented at an earlier termination hearing. Although G.S. is correct that the statutes do not contemplate any summary judgment process for a termination proceeding, the court did not grant summary judgment. It is clear that the court based its decision on the presentation of evidence by the parties; it properly considered the statutes in Title 41,

13

MCA, and ICWA; and it entered detailed findings of fact and conclusions of law explaining its decision to terminate G.S.'s parental rights.

## CONCLUSION

¶30    The District Court did not err in determining that the Department satisfied the "active efforts" requirement and made sufficient findings of fact pursuant to 25 U.S.C. § 1912(f).  Although we hold that the Department did not provide appropriate proof that the father's tribe received proper notice of the termination hearing, that error was harmless under the circumstances of this case.  We affirm.

/S/ BETH BAKER

We concur:

/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER