DA 12-0495

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 112

IN THE MATTER OF:

D.S.B. and D.S.B.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause Nos. DN 10-6 and DN 10-7
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Elizabeth Thomas, Attorney at Law, Missoula, Montana

     For Appellee:

     Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant Attorney General, Helena, Montana

     Lucy Hansen, Assistant Attorney General, Child Protection Unit, Missoula, Montana

Submitted on Briefs:  February 27, 2013

Decided:  April 30, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Birth father J.H. appeals from an order issued by the Fourth Judicial District Court, Missoula County, that terminated his parental rights to his two children, D.S.B. 1 and D.S.B. 2 (the children). We affirm.

¶2 We address the following issues on appeal:

¶3 *Issue One: Whether the District Court properly concluded that J.H.'s treatment plans were appropriate.*

¶4 *Issue Two: Whether the State presented sufficient evidence to terminate J.H.'s parental rights under the Indian Child Welfare Act (ICWA).*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 Through the Department of Public Health and Human Services (DPHHS), the State petitioned for Emergency Protective Services, Adjudication as Youths in Need of Care, and Temporary Legal Custody for the children on February 24, 2010. The State's petition alleged that J.H. had sexually abused the children, medically neglected the children, physically neglected the children, and exposed the children to unreasonable risks. J.H. stipulated on June 11, 2010, that the children should be adjudicated as Youths in Need of Care. At a hearing on July 7, 2010, the District Court held that the children are Indian Children, and the ICWA applies.

¶6 The DPHHS prepared Phase I and Phase II treatment plans for J.H. The District Court approved the treatment plans on January 28, 2011. The treatment plans included a variety of tasks that J.H. had to complete that were intended to address the issues that led to the children being removed from the parents' care. When the court approved the treatment

2

plans, J.H. was in the Department of Correction's custody for failing to register as a violent offender.

¶7     The State petitioned for permanent legal custody and termination of J.H.'s parental rights on February 7, 2012.  The District Court held hearings on February 24, 2012, May 2, 2012, May 29, 2012, and May 31, 2012.  At the hearings, the court heard testimony from an ICWA expert, the State's Child Protection Specialist (CPS), the children's therapist, and J.H.  The District Court issued an order on August 2, 2012, that terminated J.H.'s parental rights to the children.

## STANDARD OF REVIEW

¶8     We review a district court's termination of parental rights for an abuse of discretion. *In re A.N.*, 2005 MT 19, ¶ 17, 325 Mont. 379, 106 P.3d 556.  A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *In re A.N.*, ¶ 17.  We review a district court's findings of fact to determine if they are clearly erroneous and its conclusions of law to determine if they are correct. *In re I.B.*, 2011 MT 82, ¶ 18, 360 Mont. 132, 255 P.3d 56.

## DISCUSSION

¶9     *Issue One:  Whether the District Court properly concluded that J.H.'s treatment plans were appropriate.*

¶10    J.H. argues that the District Court erroneously concluded that his treatment plans were appropriate because they were not narrowly tailored to fit his needs and circumstances.  J.H. failed, however, to object to either of the treatment plans or any of their specific tasks.  "A parent who does not object to a treatment plan's goals or tasks waives the right to argue on

3

appeal that the plan was not appropriate." *In re H.R.*, 2012 MT 290, ¶ 10, 367 Mont. 338, 291 P.3d 583. We therefore refuse to consider J.H.'s argument that his treatment plans were not appropriate. We nevertheless note that substantial evidence supports the District Court's finding that the treatment plans were appropriate because they sought to address J.H.'s reported sexual abuse of the children and his chemical dependency issues, the issues that caused the children to be adjudicated as youths in need of care.

¶11    *Issue Two:  Whether the State presented sufficient evidence to terminate J.H.'s parental rights under the ICWA.*

¶12    Under Montana law, a district court may terminate parental rights if the child is adjudicated as a youth in need of care; an appropriate treatment plan has been approved by the court; the parent has not complied with the treatment plan or the treatment plan has not been successful; and the conduct or condition of the parent rendering him unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. The parent must completely comply with the treatment plan. *In re H.R.*, ¶ 12. Partial or even substantial compliance is insufficient. *In re I.B.*, ¶ 27. A court must consider the best interests of the child as the paramount factor when determining whether the conduct or condition rendering the parent unfit is likely to change within a reasonable time. Section 41-3-609(3), MCA; *In re B.S.*, 2009 MT 98, ¶ 32, 350 Mont. 86, 206 P.3d 565.

¶13    When the ICWA applies, the State additionally has to satisfy the court that it made "active efforts" to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts were unsuccessful. 25 U.S.C. § 1912(d). Because the State was seeking termination of J.H.'s parental rights, the State had

to prove that it had made "active efforts" beyond a reasonable doubt. *In re G.S.*, 2002 MT 245, ¶ 33, 312 Mont. 108, 59 P.3d 1063. The ICWA also requires a state seeking termination of parental rights of an Indian child to prove beyond a reasonable doubt that the child would likely suffer serious emotional or physical damage if the parent was to maintain custody. 25 U.S.C. § 1912(f). The evidence that supports such a finding must include the testimony of a qualified expert. 25 U.S.C. § 1912(f).

¶14 Accordingly, we will affirm the District Court's termination of J.H.'s parental rights if the District Court did not abuse its discretion when it determined that termination was warranted under § 41-3-609, MCA, a rational trier of fact could have concluded beyond a reasonable doubt that the State had made "active efforts" to provide J.H. with remedial services and rehabilitative programs, and a rational trier of fact could have concluded beyond a reasonable doubt that the children would have likely suffered serious emotional or physical damage if J.H. was to maintain custody. *See In re I.B.*, ¶ 18.

**A. Active Efforts**

¶15 J.H. argues that the State failed to prove beyond a reasonable doubt that it had made "active efforts" as required by the ICWA. "Active efforts" implies a heightened responsibility compared to passive efforts. *In re T.W.F.*, 2009 MT 207, ¶ 27, 351 Mont. 233, 210 P.3d 174. Although the State cannot simply wait for the parent to complete a treatment plan under the ICWA, a court may consider the parent's failure to participate when determining whether the State had made "active efforts." *In re T.W.F.*, ¶ 27. Additionally, a parent's incarceration may limit the remedial and rehabilitative services that the State can

5

make available to the parent to prevent the breakup of the Indian family. That is not to say that the State's obligation to make "active efforts" is excused if a parent is incarcerated, but we will not fault the State if its efforts are curtailed by the parent's own criminal behavior.

¶16    Here, the State provided J.H. with two court-ordered treatment plans, assistance of a CPS, supervised visitation, drug testing, chemical dependency treatment, counseling, referrals to treatment providers, in-home services, and parenting coaching. J.H. refused to avail himself of those services even before he was incarcerated. After J.H. was incarcerated, the CPS attempted to help him keep in contact with the children, one of his Phase II treatment plan tasks. The CPS testified, however, that J.H. had only sent one letter to the children.

¶17    The "active efforts" that the State made to provide services for the birth mother and the children are also relevant to our review because the purpose of the ICWA is to prevent the breakup of the Indian family. The State provided the children with individual counseling, implemented a trial home visit with the birth mother, and attempted to place the children with Indian family members. Based on all of the evidence presented at the hearings, a rational trier of fact could have concluded that the State had made "active efforts" to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts were unsuccessful.

**B. Serious Emotional or Physical Damage**

¶18    J.H. argues that the ICWA expert's testimony at the termination hearings failed to establish beyond a reasonable doubt that the children would likely suffer severe emotional or physical harm if he was to maintain custody. Under the ICWA, the evidence supporting

6

termination of parental rights must include expert testimony. 25 U.S.C. 1912(f). Though expert testimony is required on the issue, a court's finding that a child will likely suffer serious emotional or physical harm if the parent continues custody does not have to be based on that testimony alone. *In re A.N.*, ¶ 32 ("a district court need not conform its decision to a particular piece of evidence or a particular expert's report or testimony . . . .").

¶19     The record contains more than sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that the children would likely suffer serious emotional or physical harm if J.H. retained custody. The State's ICWA expert testified that she believed that the children would suffer both emotional and physical harm if J.H. was to retain custody. The children's therapist also testified that she would have concerns if J.H. was to retain custody. The therapist explained the children's significant emotional needs, and testified that she did not think that those needs would be met if the children were placed in J.H.'s care. Moreover, the CPS testified that J.H. had failed to complete a single task on either of his treatment plans in twenty-five months and had failed to address the conduct or condition that had rendered him unfit to parent. Based on all of the evidence presented at the hearings, the District Court did not err when it concluded that the State had proven beyond a reasonable doubt that the children would likely suffer serious emotional or physical harm if J.H. was to retain custody.

¶20     For the reasons stated above, the order of the District Court is affirmed.


                                        /S/ MIKE McGRATH

We concur:

/S/ JIM RICE
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ LAURIE McKINNON