DA 12-0593

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 325N

IN THE MATTER OF:

L.W.N.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DV 07-004
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Elizabeth Thomas, Attorney at Law; Missoula, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General; Helena, Montana

    Anne Sheehy Yegen, Assistant Attorney General, Child Protection Unit; Billings, Montana

    Nick Murnion, Valley County Attorney; Glasgow, Montana

Submitted on Briefs:  October 16, 2013
Decided:  November 5, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     L.N., the Mother, appeals from the Order of Montana Seventeenth Judicial District Court, Valley County, terminating her parental rights to her son, L.W.N. We affirm.

¶3     The Mother's two older brothers sexually abused her from when she was five to when she was sixteen. A.N., one of the brothers, is L.W.N.'s father. The Department of Public Health and Human Services (the Department) filed its initial petition for Emergency Protective Services and Temporary Investigative Authority on July 24, 2007, when L.W.N. was five days old. Both the Mother and L.W.N. were adjudicated as youth in need of care (YINC) and the Department was granted Temporary Legal Custody (TLC) over both.

¶4     The Mother and L.W.N. resided in foster care together until the Mother reached the age of majority, in 2009. After the Mother reached the age of majority, the court approved a treatment plan for the Mother, which included the Mother's agreement to enter, with L.W.N., into the Florence Crittenton Home in Helena. After entering the Florence Crittenton Home, the Mother sought out equine therapy and attended at least three sessions. The equine therapist she worked with testified that there seemed to be "a conflict with Florence Crittenton's willingness to allow her to proceed," but that the therapy "seemed to be a really good fit." The State could not pay for equine therapy on top of specialized talk therapy to deal with her sexual abuse history, and the therapist had to provide equine therapy pro bono.

¶5 In 2011, the Mother was discharged from the Florence Crittenton Home, and the Department removed L.W.N. from her custody, because she was not making progress in talk therapy and the Department felt it was not in L.W.N.'s best interests to remain in her care unsupervised. Shortly thereafter, the Department filed its first petition to terminate the Mother's parental rights. The District Court denied that petition and extended TLC in April 2011. In its order, the District Court required a new last-chance treatment plan be put in place. The plan mentioned the Mother's preference for equine therapy but noted the Department did not have funding to pay for that therapy. The Mother never objected to the treatment plan, even though she knew that the plan did not provide the Department would pay for equine therapy. She signed the treatment plan on May 6, 2011. The court approved the treatment plan on May 17, 2011.

¶6 The Mother appeared to be making progress on the treatment plan. The Mother had an unsupervised overnight visit with L.W.N. at the end of October 2011. After the visit, L.W.N. reported that he and the Mother had "bumped bottoms" and he did not like it. No charges were filed against the Mother, but contact between the Mother and L.W.N. was reduced to twice weekly phone calls.

¶7 After this visit, the Mother's progress in therapy ceased. In February 2012, the Department filed a second petition to terminate the Mother's parental rights. In August 2012, the District Court issued an order terminating the Mother's parental rights.

¶8 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174. This Court will not disturb a district court's decision on appeal unless there is a mistake of law or a finding

3

of fact not supported by substantial evidence that would amount to a clear abuse of discretion. *In re D.B.*, 2012 MT 231, ¶ 17, 366 Mont. 392, 288 P.3d 160 (internal quotation omitted). We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. *In re E.Z.C.*, ¶ 19.

¶9 A district court may order termination of a parent-child legal relationship when the court makes a finding that the child is an adjudicated YINC and both of the following exist: (1) an appropriate treatment plan that has been approved by the court has not been complied with by the parent, or has not been successful; and (2) the conduct or condition of the parent rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. Factors a court must consider in determining whether a parent's conduct or condition rendering the parent unfit are likely to change include "emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time." Section 41-3-609(2)(a), MCA.

¶10 The Mother alleges that the State violated its duty of good faith in executing the last-chance treatment plan. She argues that, since talk therapy had not worked for her, a good faith effort by the Department should have included paid-for equine therapy.

¶11 The Mother's argument regarding the State's good faith necessarily incorporates an allegation that the treatment plan was somehow inappropriate. "A parent who does not object to a treatment plan's goals or tasks waives the right to argue on appeal that the plan was not appropriate." *In re D.S.B.*, 2013 MT 112, ¶ 10, 370 Mont. 37, 300 P.3d 702

(quotation and citation omitted).  Where a parent fails to object to a treatment plan in a timely manner, the parent waives any argument regarding the propriety of the treatment plan. *See In re A.A.*, 2005 MT 119, ¶¶ 21-28, 327 Mont. 127, 112 P.3d 993.  Here, the Mother never objected to the treatment plan.  She signed the treatment knowing it did not provide that the State would pay for equine therapy.  We will not consider the Mother's argument regarding her treatment plan's propriety, or the State's good faith, because she failed to object to the treatment plan in a timely manner.

¶12  The Mother also argues that the District Court erred in finding that the Mother's difficulty in addressing her history of abuse rendered her unfit and unlikely to change within a reasonable time.

¶13  When considering whether a parent's conduct is likely to change within a reasonable time, "the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child."  Section 41-3-609(3), MCA.  Here, despite having had a treatment plan in place since 2009, the Mother had shown little progress towards processing her abuse.  The District Court found, based on the expert testimony of several therapists, that "it is not in the child's best interest to wait the years necessary for [the Mother] . . . to appropriately process the abuse [she suffered] . . . ."  The District Court found that, in the meantime, her failure to progress towards understanding her abuse was placing the child "at great risk of harm while under her sole care and custody."  The record provides substantial evidence to support these determinations.

¶14  We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions.  The issues

5

in this case are controlled by the statutes and precedent. The District Court did not abuse its discretion in terminating the Mother's parental rights. Although these circumstances are tragic, the Mother's healing cannot occur at the child's expense. L.W.N. and his Mother need to move forward with separate lives.

¶15    Affirmed.

/S/ MICHAEL E WHEAT

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS