DA 13-0147

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 352N

IN THE MATTER OF:

K.G.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADN 11-001
Honorable Greg Pinski, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Anne-Marie K. Simeon, Attorney at Law; Billings, Montana
(*Attorney for Mother*)

        Nancy G. Schwartz, NG Schwartz Law, PLLC; Billings, Montana
(*Attorney for Father*)

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Pamela C. Collins, Assistant
Attorney General; Helena, Montana

        Theresa Diekans, Assistant Attorney General, Child Protection Unit; Great
Falls, Montana

Submitted on Briefs:  October 9, 2013
Decided:  November 19, 2013

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The State of Montana filed a petition in the Eighth Judicial District Court, Cascade County, to grant permanent legal custody of an Indian child (referred to herein as K.G.) to the Department of Public Health and Human Services and to terminate the parental rights of K.G.'s mother and father (Mother and Father, respectively). Mother and Father now appeal. We affirm.

¶3 K.G. was born January 1, 2011. Mother had fresh track marks on her arms while in the hospital giving birth to K.G., and it was determined that K.G. had been exposed to methamphetamine while in utero. K.G. was removed from Mother's care on January 4, 2011, prior to leaving the hospital.

¶4 The State commenced the present proceedings on January 11, 2011, with the filing of a petition for temporary investigative authority and emergency protective services. K.G.'s tribal affiliation is the Blackfeet Tribe. Accordingly, pursuant to the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, the State sent notice of these proceedings to the Blackfeet Tribe on January 20, 2011. The Tribe intervened in the case but ultimately chose not to transfer the case to tribal court. Neither Mother nor Father requested that the case be transferred to tribal court.

2

¶5    On March 16, 2011, the District Court granted the Department temporary investigative authority. On July 20, 2011, the District Court adjudicated K.G. a youth in need of care and granted the Department temporary legal custody. On January 25, 2012, the District Court extended the temporary legal custody and approved the Department's proposed treatment plans for Mother and Father. The court found the treatment plans "reasonable and appropriate" and ordered Mother and Father to complete the plans.

¶6    On July 23, 2012, the State filed the petition for permanent legal custody and termination of parental rights, citing abandonment and failure of court-ordered treatment. *See* § 41-3-609(1)(b), (f), MCA. The District Court held a hearing on January 18, 2013. Present at the hearing were Father, represented by counsel; Mother (by Vision Net), represented by counsel; counsel for K.G.; the guardian ad litem; counsel for the State; and a social worker. Mother and Father contested the State's petition. The District Court received testimony from Father, from the social worker, and from an ICWA expert. The District Court thereafter entered findings of fact and conclusions of law. Based on those findings and conclusions, the court terminated the parent-child relationship and granted permanent legal custody of K.G. to the Department.

¶7    Mother and Father both argue on appeal that the State failed to present sufficient evidence to justify termination of their parental rights. Under Montana law, a district court may terminate parental rights if the child is adjudicated as a youth in need of care, an appropriate treatment plan has been approved by the court, the parent has not complied with the treatment plan or the treatment plan has not been successful, and the conduct or condition

3

of the parent rendering him or her unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA; *In re D.S.B.*, 2013 MT 112, ¶ 12, 370 Mont. 37, 300 P.3d 702. When ICWA applies, the court also must be satisfied that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, that these efforts have proved unsuccessful, and that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(d), (f). The determination of serious emotional or physical damage to the child must be supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses. 25 U.S.C. § 1912(f).

¶8      Based on the record before us, we agree with the State that sufficient evidence supports the District Court's findings on each of these factors. The record establishes that Mother and Father failed to complete or comply with various components of their respective court-ordered treatment plans. In particular, Mother failed to complete chemical dependency treatment, in part because she used cannabis while in treatment. Mother never submitted to urinalysis testing to confirm whether she had become sober or was maintaining sobriety. Mother failed to maintain a safe and stable home environment, in part because she was in and out of jail for substantial lengths of time. In November 2012, she was sentenced to the Department of Corrections for three years, with two years suspended. Mother did not request regular updates about K.G. while incarcerated, she did not seek or follow through with regular visitations with K.G. when not incarcerated, and she failed to maintain regular contact with the social worker.

4

¶9 Father successfully completed a treatment program but failed to provide evidence that he is maintaining sobriety (e.g., by submitting to urine tests). Father also failed to maintain contact with the social worker and, as a result, the safety and stability of his home environment was unknown. Father additionally failed to respond to messages left by the social worker, failed to attend regular visitations with K.G., demonstrated a lack of interest in seeing K.G., and failed to sign all necessary releases of information to the Department.

¶10 Anna Fisher (the ICWA expert) testified that continued custody of K.G. by Mother and Father would likely result in serious emotional or physical damage to K.G. Fisher based this opinion on Mother's history of drug abuse, Mother's inability to maintain sobriety during the pendency of this case, Father's lack of communication, and Father's lack of effort throughout the pendency of this case.

¶11 At the time the District Court entered its decision, K.G. had been in the custody of the Department since she was four days old. She was in a kinship foster home and had been in this placement for nearly the entirety of her life. She had never resided with either Mother or Father. The social worker (Kami Moore) testified that K.G. is a happy two-year-old who is doing very well in her stable foster home environment. Moore further testified that K.G. has never been removed from the kinship foster home and that the Department had no concerns about the home.

¶12 The District Court determined that Mother is unfit, unable, or unwilling to give K.G. adequate parental care given Mother's present incarceration, her history of incarceration, her failure to successfully complete drug treatment, and her history of drug abuse and failed

5

treatment programs. The District Court reached the same conclusion regarding Father based on his history of incarceration, his history of drug abuse, and his failure to submit to urinalyses or provide other proof of successful completion of drug treatment. The District Court further determined, based on proof beyond a reasonable doubt, that the conduct or conditions of Mother and Father rendering them unfit are unlikely to change within a reasonable time, that K.G.'s best interests would be served by termination of the parent-child legal relationship, and that continued custody of K.G. by Mother and Father would likely result in serious emotional or physical damage to K.G.

¶13 Finally, the District Court stated it was satisfied

> that the social worker made active efforts to provide remedial services and rehabilitative programs to prevent the breakup of the Indian family. The Court heard testimony that the social worker repeatedly attempted to keep in contact with the parents and offered visitation, treatment, UA testing, transportation to visitation, and other services to [Mother] and [Father]. [Mother] and [Father] failed to participate in their treatment plans or to work with the social worker. The Court is therefore satisfied, by proof beyond a reasonable doubt, that DPHHS's efforts have proven unsuccessful.

The evidence presented to the District Court supports the court's findings.

¶14 Mother argues one other issue on appeal: that the State failed to comply with ICWA's notice requirement. Under 25 U.S.C. § 1912(a), the State was required to notify the Blackfeet Tribe, by registered mail with return receipt requested, of the pending proceedings and of the Tribe's right of intervention. Mother concedes that the State gave proper notice to the Tribe at the outset of these proceedings and that the Tribe intervened in the action. In its May 5, 2011 Notice of Intervention, the Tribe stated that all papers may be served upon the

Tribe's ICWA Department, and identified Raquel Vaile as the ICWA Coordinator. In its February 22, 2012 Amended Notice of Intervention, the Tribe still identified Vaile as "[t]he ICWA contact person," but stated that all papers may be served upon the address of the Tribe's counsel of record. Mother thus contends that because the State sent its July 23, 2012 petition for termination of parental rights to the ICWA coordinator by certified mail, rather than sending it to the Tribe's counsel of record by registered mail with return receipt requested, the State thereby failed to comply with ICWA's notice requirement. Mother fails, however, to cite any language in the statute or any caselaw requiring the State to file multiple notifications under 25 U.S.C. § 1912(a) within the same pending proceeding. The State unquestionably gave proper notice at the outset, and the State sent the petition for termination to the Tribe's "ICWA contact person." Consequently, it appears the purpose of the statute was satisfied.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶16 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT

7

/S/ JIM RICE
/S/ BRIAN MORRIS