DA 13-0672

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 155N

IN THE MATTER OF:

D.L.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 12-001
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Meri K. Althauser, Montana Legal Justice, PLLC, Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Scott Twito, Yellowstone County Attorney, Richard S. Helm, Deputy County
Attorney, Billings, Montana

Submitted on Briefs:  May 8, 2014
Decided:  June 10, 2014

Filed:

_____
                 Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     D.L. was born in 2005. D.L.'s biological father, B.L., did not have contact with D.L. until a short visit in 2010, and he has not had contact with D.L. since that visit. D.L.'s biological mother, R.M.B., had custody of D.L. until he was placed in protective care after an abuse and neglect hearing. On January 13, 2012, the Department of Public Health and Human Services (DPHHS) filed a petition for emergency protective services, adjudication of D.L. as a youth in need of care, and temporary legal custody. B.L. was served by publication because he could not be personally served prior to the hearing. The District Court adjudicated D.L. to be a youth in need of care and granted temporary legal custody to DPHHS. DPHHS filed a parenting treatment plan for B.L. and it was approved by the District Court. DPHHS struggled to locate B.L. and eventually discovered that he had been incarcerated in Alabama. DPHHS filed and received court approval for an amended treatment plan to account for B.L.'s incarcerated status.

¶3     DPHHS first received correspondence from B.L. on December 18, 2012. On January 31, 2013, B.L. sent DPHHS his social/medical history form, pursuant to the tasks in his amended treatment plan. B.L. was released from incarceration on May 30, 2013, but failed to keep in contact with DPHHS. DPHHS was unable to locate B.L. through his family or by

contacting the jail where he had been incarcerated. B.L. has not completed any portion of his treatment plan since his release from prison.

¶4 DPHHS moved to terminate B.L.'s parental rights and a hearing was held on July 8, 2013. Counsel for B.L. appeared at that hearing and explained that he had spoken with B.L. at the beginning of the case, but that B.L. had not responded to any recent correspondence. The District Court heard testimony from DPHHS about its efforts to contact B.L. and his failure to complete the treatment plan. The court granted DPHHS's motion to terminate B.L.'s parental rights over D.L.

¶5 We review a termination of parental rights for abuse of discretion. *In re D.S.B.*, 2013 MT 112, ¶ 8, 370 Mont. 37, 300 P.3d 702 (citing *In re A.N.*, 2005 MT 19, ¶ 17, 325 Mont. 379, 106 P.3d 556). We presume that a district court's decision is correct and we will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence. *In re E.K.*, 2001 MT 279, ¶ 33, 307 Mont. 328, 37 P.3d 690.

¶6 A court may terminate parental rights upon a finding that the child has previously been adjudicated a youth in need of care, that the parent has not complied with a court-approved treatment plan, and that the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. In evaluating whether the conduct or condition of a parent is unlikely to change, the court must give primary consideration to the physical, mental and emotional needs of the child. Section 41-3-609(3), MCA. The State is not excused from attempting to reunite a child with an incarcerated parent; however, "a parent's incarceration may limit the remedial and

3

rehabilitative services that the State can make available to the parent . . . ." *In re D.S.B.*, ¶ 15 (quotation and citations omitted).

¶7     B.L. argues that DPHHS did not make "reasonable efforts" to repair the parent-child relationship and that much of its correspondence to him never reached him due to his change of address and his incarceration. Reasonable efforts may include development of a treatment plan, provision of services pursuant to a treatment plan, and periodic review of each case to ensure timely progress. Section 41-3-423(1), MCA. The District Court did not include the phrase "reasonable efforts" in its order; however, it took notice of the fact that DPHHS had filed a treatment plan and amended that plan to account for B.L.'s incarceration. The court heard testimony that, pursuant to the treatment plan, B.L. was eligible for benefits and services to help him complete the treatment plan, and that DPHHS had attempted to contact him several times throughout the process. The court also noted that B.L. had "failed to make even minimal attempts to contact DPHHS or otherwise comply with his [treatment plan] . . . ." B.L.'s lawyer told the court that he had originally contacted B.L. about the case, but that B.L. was no longer answering his correspondence. The court heard testimony that B.L. had been informed of his treatment plan and provided limited replies when asked to provide information or complete certain tasks in the treatment plan. In the words of the District Court, "[B.L.] knows the Department's involved. He's even contacted them a couple of times. He's never, as far as I can tell, had much contact with [his counsel] about his rights or parenting this child." The court heard substantial evidence to support the conclusion that B.L. failed to properly communicate with DPHHS or his attorney and thereby thwarted any efforts at reunification.

¶8 Finally, B.L. contends that the District Court erred in determining that he failed to complete the treatment plan and finding that his condition was unlikely to change within a reasonable time. B.L.'s argument, however, relies entirely on his assertion that DPHHS did not take reasonable efforts to reunify B.L. and D.L. We have already determined that the District Court's conclusion on that matter was legally correct and supported by substantial evidence. Therefore, we also affirm the court's conclusion that B.L. had not completed the treatment plan and that his condition was unlikely to change within a reasonable time.

¶9 The District Court correctly concluded that "we can't wait forever to make some final plan for [D.L.]." The child's need for a stable home is not subordinate to the timelines of his parents. *In re D.A. and M.A.*, 2008 MT 247, ¶ 26, 344 Mont. 513, 189 P.3d 631. Accordingly, D.L.'s need for a permanent home raises a heavy presumption against B.L.'s plea for continual delays that would result in permanency at some unascertainable future date.

¶10 For the foregoing reasons, we affirm. The District Court's decision was supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted. We have therefore determined to decide this case pursuant to Section I, Paragraph 3(d), of our Internal Operating Rules, which provides for noncitable memorandum opinions.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JIM RICE
/S/ LAURIE McKINNON

5

/S/ PATRICIA COTTER
/S/ BETH BAKER