No. 00-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 109

IN THE MATTER OF THE ESTATE OF

AMY WITTMAN,

Deceased.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bruce O. Bekkedahl, West, Patten, Bekkedahl & Green, Billings, Montana; Patricia D. Peterman, Billings, Montana

For Respondent:

Elizabeth Honaker, Honaker Law Firm, Billings, Montana

Submitted on Briefs: March 1, 2001
Decided: June 28, 2001

Filed:

_____

Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Appellant, James Wittman (James) appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, admitting the last will and testament of his mother Amy Wittman to probate, after finding that she had testamentary capacity and was not unduly influenced when she executed her will in September of 1997. We affirm.

¶2 The dispositive issue on appeal is whether the District Court's finding of no undue influence is supported by substantial credible evidence, and is not clearly erroneous.

## Factual and Procedural History

¶3 Amy Wittman died on July 16, 1999, at the age of 95. She had thirteen children, with nine of them surviving her. From 1953 to 1997 she made four different wills. The final two, made in 1994 and 1997, are at issue in this proceeding. Amy's son James argues that the 1994 will, and not the 1997 will, should have been admitted to probate. The 1994 will left Amy's entire estate to James, so long as he survived her. In the event he predeceased her, the 1994 will dictated the estate would go to the remaining children in equal shares. The 1997 will, however, divided the estate equally among the children.

¶4 James had lived with Amy for most of his life, ultimately moving out in 1998, after a series of disagreements with his mother and siblings. Amy suffered from a series of illnesses toward the end of her life, including two strokes. The first was in 1995 and the second in 1997. The state of Amy's health varied during this period, alternating between deterioration and improvement. It ultimately became clear that full time care was necessary, and several of Amy's daughters assumed care for her starting in July of 1997.

¶5 After having some disagreements with James, several of the children spoke with Amy concerning James' handling of Amy's finances. It appears that while he was living in her home, James may have been neglecting to pay certain bills for her home, and may also have been spending money from Amy's Social Security and VA checks for his personal use. Finally, at least in part at the urging of her children, Amy decided to make a new will. The children therefore contacted attorney Ingrid Gustafson, who met with Amy regarding the new will, and then prepared a revised will. The fourth and final will, made in

September of 1997, divided the estate equally among the children, with shares left to certain grandchildren as lineal descendants of the deceased children.

¶6 Ms. Gustafson testified that Amy read her previous will and indicated she wanted to make a new one. Amy and Gustafson met alone to discuss the making of the new will. Gustafson testified that she questioned Amy carefully to determine that Amy understood what she was doing. She spoke with her about a variety of issues, including the division of her estate. According to Gustafson, Amy was alert, understood the significance of changing her will, and understood that the new will would divide her estate among her children equally. Although several of her children brought Amy to the attorney's office, none of them were in the room when Amy and her attorney discussed the provisions of Amy's new will.

¶7 James brought this proceeding in District Court, petitioning for formal probate of the will dated May 24, 1994. David K. Wittman, the respondent, opposed the probate of the 1994 will on the grounds that a valid later will was executed by Amy. He requested that the District Court probate the 1997 will. James contested the 1997 will on the grounds that Amy Wittman lacked testamentary capacity and was unduly influenced. Following a hearing, the District Court concluded that the decedent had testamentary capacity and was under no undue influence when executing her 1997 will. The District Court ruled that the 1997 will was entitled to probate and that David Wittman was a suitable person to be personal representative.

¶8 James does not appeal from the court's finding that Amy had testamentary capacity, but does appeal from the court's finding that there were no specific acts of undue influence exercised over Amy by his siblings.

## Standard of Review

¶9 On appeal, this Court will uphold findings of fact in an equitable case unless they are clearly erroneous. *Matter of E.P.* (1990), 241 Mont. 316, 319, 787 P.2d 322, 325. Rule 52 (a), M.R.Civ.P. We first inquire into whether the findings are supported by substantial evidence. *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. The evidence is reviewed in the light most favorable to the prevailing party, and the credibility of witnesses and the weight given to the testimony are the responsibility of the trial court. *Interstate Production Credit*, 250 Mont. at 324, 820 P.2d at 1287. Our standard of review of questions of law is whether the district court's interpretation of the

law is correct. *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## Discussion

¶10 **Whether the District Court's finding of no undue influence was supported by substantial, credible evidence and is not clearly erroneous.**

¶11 James argues that the District Court's findings were not supported by substantial, credible evidence. Among other things, he argues that the District Court should have weighed testimony by Amy's physician more heavily than it did, and that the District Court should not have relied so strongly on the testimony of the attorney who drafted Amy's will. He further argues that the District Court did not make sufficient findings on the elements of undue influence. We disagree.

¶12 As the contestant of the will, James had the burden of establishing that undue influence was exerted over Amy in the making of the will. Section 72-3-310, MCA, provides:

> In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue, and heirship. Proponents of a will have the burden of establishing prima facie proof of due execution in all cases and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

¶13 In Montana, undue influence is defined by statute. Section 28-2-407, MCA, provides that undue influence is:

> (1) the use by one in whom a confidence is reposed by another who holds a real or apparent authority over him of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) taking an unfair advantage of another's weakness of mind; or (3) taking a grossly oppressive and unfair advantage of another's necessities or distress.

In determining whether undue influence has occurred in the making of a will, the statutory requirements must control. *In re the Estate of Bradshaw*, 2001 MT 92, ¶ 16, ___ Mont.

\_\_\_, ¶16, \_\_\_ P.3d \_\_\_, ¶ 16. In addition, the court may consider the following five criteria: (1) the existence of a confidential relationship between the person alleged to be exerting undue influence and the testator; (2) the testator's physical condition as it affects her ability to withstand undue influence; (3) the testator's mental condition as it affects her ability to withstand undue influence; (4) the unnaturalness of the disposition which would show an unbalanced mind or a mind easily susceptible to undue influence; and (5) the demands and importunities that may have affected the testator, taking into consideration the time, place, and surrounding circumstances. *Estate of Maricich* (1965), 145 Mont. 146, 161, 400 P.2d 873, 881, *Cameron v. Cameron* (1978), 179 Mont. 219, 229, 587 P.2d 939, 945. While the court may consider these five criteria in determining the existence of undue influence, all five criteria need not be present. *Estate of Bradshaw*, ¶ 16.

¶14 Undue influence is never presumed and must be proven like any other fact. *Estate of Lein* (1994), 270 Mont. 295, 304, 892 P.2d 530, 535 (overruled, in part, on other grounds). Moreover, we have held that the mere opportunity to exercise influence on the testator is not sufficient to prove undue influence and invalidate a will. *Dybvik v. Dybvik* (1982), 201 Mont. 389, 397, 654 P.2d 989, 993.

¶15 We turn now to the five criteria set forth in *Cameron,* 179 Mont. at 229, 587 P.2d at 945. Examining the facts before us, the first criterion of the existence of a confidential relationship has been met. There was clearly a confidential relationship between Amy Wittman and the children who discussed with Amy the option of her changing her will. Amy was being cared for by her children and saw them on a daily basis. Especially during her periods of illness, she required extensive care which was provided by them.

¶16 In evaluating the second and third criteria, we look at the mental and physical condition of the testator to determine if either might affect her ability to withstand influence. It is clear that Amy's physical condition was compromised later in life. She became ill in 1989, and suffered a stroke in June of 1995 and a second stroke in October of 1997. Her physical condition and her dependence on others for everyday tasks might well have made her susceptible to the influence of those caring for her.

¶17 Following her stroke in 1995, Amy was treated by Dr. John Byorth. Dr. Byorth testified at trial that following this stroke, Amy's health was compromised and that she could have been subject to undue influence. However, it appears from the record that Byorth hadn't seen Amy for some time when she made her 1997 will, and that her health had, in the interim, improved dramatically. Furthermore, it does not appear from the

medical records that Byorth ever made any evaluation of Amy's mental status. On the other hand, the District Court found significance in Amy's attorney's uncontroverted testimony that when the will was executed, Amy was mentally alert and oriented, that she understood the nature of her property, and that she understood the impact of the change in the disposition of her estate.

¶18 The fourth element to be considered is the unnaturalness of the disposition. James argues that the change in the will was unnatural because he had lived in the family home for 55 years and was disabled, and the 1997 will deprived him of most of his interest in that home. It is clear that Amy and James cared for each other and depended on each other for many years. Moreover, in both the 1989 and the 1994 wills, Amy demonstrated her intent to leave her estate entirely to James.

¶19 The findings of fact indicate that the three children who helped take care of Amy after she became ill, discovered and told Amy that James had used Amy's Social Security and VA checks for his personal use, especially in local bars; had failed to pay some utilities; and had failed to pay her real estate taxes for three years. The District Court also found that when shown the past due notices, bank account statements reflecting overdrafts, canceled checks to bars, and the real estate tax bills in arrears, Amy became hurt and upset. Under these circumstances, the change in disposition makes sense. Furthermore, absent unusual circumstances, it would be surprising for any court to find a will dividing an estate equally among the decedent's children unnatural.

¶20 The fifth element concerns the demands and importunities that may have affected the testator, taking into consideration the time, place, and surrounding circumstances. James argues that his siblings were unhappy with him because of their belief he was misusing his mother's money, and that they decided the will had to be changed, and arranged for a lawyer to handle the arrangements. Thus, he concludes, they encouraged her to make the change in her testamentary disposition.

¶21 At most, James has shown that his siblings had the opportunity to exercise undue influence. However, the opportunity to exercise undue influence on the testator is not sufficient to prove undue influence and invalidate a will. Rather, the opportunity to exercise undue influence is to be considered and correlated with the alleged acts of influence to determine if the acts amount to undue influence. *Estate of Lien*, 270 Mont. at 304, 892 P.2d at 535. This Court has previously stated:

Mere general influence in the affairs of life or method of living at the time of the execution of a will by a testator is not proof of undue influence in the contemplation of our statute, and, in order to establish it as a fact, it must be shown by proof that it was exercised upon the mind of the testator directly to procure the execution of the will. Mere suspicion that undue influence may have or could have been brought to bear is not sufficient. It is never presumed, and must be proven like any other fact. (Citation omitted).

Here, while James may have suspected that undue influence was brought to bear on his mother by his siblings, the District Court found no overt proof of it.

¶22 James makes the assertion that the District Court mis-weighed the evidence, and urges this Court to re-weigh the evidence in his favor. We will not do so. Where there are conflicts in the evidence, it is the trial court's responsibility, and not this Court's, to weigh that evidence. In making a determination whether undue influence was exercised in a case where the credibility of witnesses is of prime importance, the determination of the weight to be given to the testimony is the primary function of the trial judge. *Cameron,* 179 Mont. at 228-29, 587 P.2d at 945.

¶23 The District Court found that there were no specific incidences of undue influence exerted over Amy Wittman in the making of her 1997 will. Having reviewed the record, we find substantial evidence to support this finding, and conclude that the District Court did not err in this regard. There being no specific incidences of undue influence, and the District Court having found that Amy had the requisite testamentary capacity to make the 1997 will, there is no basis for invalidating it. The judgment of the District Court is therefore affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER