FILED

07/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0509

DA 24-0509

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 159

IN THE MATTER OF THE ESTATE OF
DAVID BRIAN WOLFE,

     Deceased.

WENDY RAE WOLFE,

     Plaintiff and Appellant,

  v.

PHILIP M. WOLFE, AND DOES 1-5,

     Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause Nos. DV-2023-1417 and
DP-2024-79
Honorable Danielle Coffman, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Angela M. LeDuc, Bruce A. Fredrickson, Taylor R. Miller, Rocky
Mountain Law Partners, P.C., Kalispell, Montana

     For Appellee:

          David G. Tennant, Montana Lawyer Services, PLLC, Kalispell, Montana

          Submitted on Briefs:  March 19, 2025

          Decided:  July 29, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Wendy Rae Wolfe (Wendy) appeals from a July 26, 2024 Order of the Eleventh Judicial District Court, Flathead County, granting summary judgment in favor of Philip M. Wolfe (Philip) in a quiet title action. The District Court determined Wendy failed to produce a legally meaningful challenge to the validity or enforceability of a beneficiary deed. We reverse and remand for further proceedings.

¶2 We restate the following dispositive issue for review:

*Whether the District Court erred in ruling that no genuine issues of material fact existed relevant to the validity of the 2018 beneficiary deed.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 David Wolfe (David) owned real property in Columbia Falls, Montana, (the Property). Beginning in late 2017, David began experiencing significant health problems, including a broken hip which resulted in severe pain, a lack of mobility, and an inability to care for himself independently. During this period, David was dependent on friends and family to assist him with basic tasks and medical care. David's brother Philip paid the taxes on the Property.

¶4 In August 2000, David prepared and executed a Last Will and Testament (Will), which purportedly devised the Property to his only daughter, Wendy, in the event of his death. On October 9, 2023, David took his own life. Shortly thereafter, Wendy began residing on the Property because she believed the Will conveyed ownership to her. However, Philip claimed a notarized Beneficiary Deed (Deed), signed by David on July 26,

2

2018, had conveyed the Property to him upon David's death. On November 8, 2023, Philip issued a Notice to Vacate the Property to Wendy.

¶5 Wendy filed a pro se quiet title action in December 2023,[1] asserting that David's Will conveyed the Property to her and that Philip had obtained the Deed fraudulently either by forging David's signature on the deed itself or, in the alternative, because of Philip's undue influence on David. Wendy offered the Will and David's purported suicide note, in which he wrote "my property and my money I leave to my Daughter[,] Wendy Wolfe."[2] She included an affidavit from her uncle Roger, who adamantly claimed David intended the Property go to Wendy and that David consistently disclaimed Philip's representations of future ownership. Wendy also offered her own affidavit, attesting to David's intentions for his property.

¶6 Philip counterclaimed, requesting declaratory judgment that the Deed conveyed the Property to him and that Wendy was trespassing. Philip filed a motion for summary judgment on March 12, 2024. In support of his motion for summary judgment, Philip

---

[1] After obtaining legal representation, Wendy further applied for informal probate as the personal representative of David's estate in March of 2024. The District Court consolidated the quiet title and probate actions, over Philip's objection, but later unconsolidated the cases. Wendy's appeal here concerns only the District Court's grant of summary judgment to Philip in the quiet title action.

[2] Despite Wendy's reference to this exhibit as a "holographic will," the District Court never referred to David's unsigned suicide note as such. A writing is operable as a "holographic will, whether or not witnessed, if the signature *and* material portions of the document are in the testator's handwriting." § 72-2-522(2), MCA (emphasis added). Whether or not David's suicide note meets the requirements of a holographic will was never contested below and the parties do not raise the issue in the instant case. Further, whether the Deed was valid is the dispositive issue—Wendy offered David's suicide note as evidence of intent—and a holographic will, if found to exist, would not supersede a beneficiary deed. Section 72-6-410(1)(a), MCA.

3

relied on the Deed and a report from an expert witness providing handwriting analysis of David's signature on the Deed. He also presented an affidavit from the notary public indicating she checked David's driver's license prior to both his signing of the deed and his signing of a homestead declaration for the Property in 2016. As further evidence of David's intent to convey the Property to him, Philip provided affidavits from another brother and one of David's neighbors, both of whom indicated David did not want the Property to go to Wendy due to her drug use. Wendy sought an extension to obtain David's medical records and additional discovery to respond to Philip's motion for summary judgment, as well as obtain her own expert witness report on David's alleged signature, but the court denied this motion. The court likewise denied Wendy's attempt to certify herself as an expert witness on David's signature.

¶7　The District Court granted Philip's motion for summary judgment on July 26, 2024. The court determined that Wendy's evidence that the Deed was obtained by undue influence or fraud was merely speculative. The District Court concluded that Wendy failed to produce any legally meaningful challenge to the Deed. Wendy now appeals.

**STANDARD OF REVIEW**

¶8　"We review summary judgment rulings de novo for conformance to M. R. Civ. P. 56." *House v. U.S. Bank Nat'l Ass'n*, 2021 MT 45, ¶ 14, 403 Mont. 287, 481 P.3d 820 (citing *Alexander v. Mont. Developmental Ctr.*, 2018 MT 271, ¶ 10, 393 Mont. 271, 430 P.3d 90). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

4

issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). "A genuine issue of material fact is an issue of inconsistent fact, material to the elements of a claim or defense at issue, and not amendable to judgment as a matter of law." *House*, ¶ 14 (citation omitted).

## DISCUSSION

¶9 "The party seeking summary judgment has the initial burden of showing the complete absence of any genuine issue of material fact on the Rule 56 record and that the party is thus entitled to judgment as a matter of law." *House*, ¶ 14 (citing *Davis v. Westphal*, 2017 MT 276, ¶ 12, 389 Mont. 251, 405 P.3d 73). The burden then shifts to the opposing party to either show the existence of a genuine issue of material fact or that the moving party is nonetheless not entitled to judgment as a matter of law. *House*, ¶ 14 (citing *Davis*, ¶ 12). "[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." M. R. Civ. P. 56(e)(2). "This Court draws all reasonable inferences from the offered proof in favor of the party opposing summary judgment." *Somers v. Cherry Creek Development, Inc.*, 2019 MT 101, ¶ 6, 395 Mont. 389, 439 P.3d 1281 (citation omitted).

¶10 Wendy makes two alternative arguments regarding the validity of the Deed. First, she argues that a genuine issue of material fact exists regarding her claim of undue influence. Second, she argues that the District Court improperly engaged in fact finding by weighing competing expert opinions on the validity of David's signature on the Deed.

5

**Evidence of Undue Influence**

¶11 Wendy claims Philip obtained the Deed by exerting undue influence over David. "Undue influence negates the free consent necessary for the proper formation of a contract and permits the contract's recission by the party influenced by it." *Smith v. Lindemulder*, 2022 MT 119, ¶ 13, 409 Mont. 69, 512 P.3d 260 (quotation omitted). Section 28-2-407, MCA, defines undue influence as:

> (1) the use by one in whom a confidence is reposed by another person or who holds a real or apparent authority over the other person of the confidence or authority for the purpose of obtaining an unfair advantage over the other person;
> (2) taking an unfair advantage of another person's weakness of mind; or
> (3) taking a grossly oppressive and unfair advantage of another person's necessities or distress.

Section 28-2-407, MCA. A court may also consider additional non-exclusive factors in guiding its application of the statutory requirements, including (1) any confidential relationship between the person alleged to be exercising undue influence and the donor; (2) the physical condition of the donor as it may affect their ability to withstand influence; (3) the mental condition of the donor as it may affect their ability to withstand influence; (4) the unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to influence; and (5) the demands and importunities as they may affect the donor, taking into account the time, place, and surrounding circumstances. *Stanton v. Wells Fargo Bank, N.A.*, 2007 MT 22, ¶ 21, 335 Mont. 384, 152 P.3d 115 (citation omitted).

¶12 Here, Philip submitted evidence supporting the validity of the deed, including affidavits supporting David's intent to pass the property to him and an affidavit from the

notary public who witnessed David sign the Deed. The burden then shifted to Wendy to prove a genuine issue of material fact regarding the validity of the Deed. She submitted affidavits addressing David's mental and physical health; David's 2000 Will bequeathing the Property to Wendy, David's alleged suicide note affirming his intention that the Property pass to Wendy in accordance with the Will; and evidence Philip paid David's property taxes owed on the Property around the time the Deed was executed. She also submitted affidavits from two people personally close to David: her uncle Roger and David's ex-wife. Roger attested to his close relationship with David and his personal knowledge of David's intent to bequeath the Property to Wendy. David's ex-wife attested to visiting him at the Property three or more times per week from 2017 until his death to help care for him and the Property, as well as to his intent for Wendy to inherit the Property. Wendy also submitted into the record an alleged suicide note that repeated the same bequest that was contained in the Will—for the Property to pass to Wendy upon his death. The District Court concluded that this evidence did not address David's mental state at the time he signed the Deed in 2018.

¶13    However, Wendy's evidence implicates several of the factors a court may consider in finding undue influence. She presented evidence beyond mere speculation as to whether a confidential relationship existed between the brothers, whether David's physical condition rendered him more susceptible to undue influence, and whether the unnaturalness of the disposition suggested David was of unbalanced mind. *See Stanton*, ¶ 21. Specifically, Wendy presented an affidavit from Carol Ryan, who regularly provided

personal care to David over the eight years preceding his death, describing his deteriorating physical condition, reduced mobility, and increased dependency on others, including Philip, around the time the Deed was executed. Additionally, affidavits from Roger Wolfe and Carol Ryan consistently attest that David repeatedly affirmed his intent to leave the Property to Wendy, contradicting Philip's assertions about David's intentions. Such conflicting testimony, especially concerning Philip's role in David's financial affairs—such as paying property taxes during this critical period—raises genuine questions about Philip's exertion of undue influence over David, sufficient to warrant resolution by a jury. Viewing this evidence presented by Wendy in a light most favorable to her and drawing all reasonable inferences in her favor, we conclude that a genuine issue of material fact in determining whether undue influence was exerted on David by Philip exists.

**Evidence of Fraud**

¶14 Wendy also asserts the District Court improperly weighed evidence related to the legitimacy of David's signature on the Deed. In a summary judgment proceeding, the district court need not weigh evidence, choose one disputed fact over another, or assess credibility of the witnesses. *Wurl v. Polson School Dist. No. 23*, 2006 MT 8, ¶ 11, 330 Mont. 282, 127 P.3d 436 (quotation omitted).

¶15 Here, the parties disagree over whether the Deed was fraudulently obtained with a forged signature. To prove that David signed the Deed, Philip submitted a report from an expert witness on handwriting that David had in fact signed the Deed and offered an affidavit from the notary public who witnessed the signing. While the court denied

8

Wendy's attempt to certify herself as an expert on David's handwriting, Wendy also attested to her personal knowledge of David's signature to prove the signature on the Deed was a forgery. Regardless of Wendy's status as an expert, her personal knowledge of her father's signature qualifies her to testify to the validity of the signature on the Deed. M. R. Evid. 701. Lay testimony results from reasoning familiar in everyday life, as distinguished from expert testimony requiring specialized training. Wendy's lifelong familiarity with David's handwriting provides precisely the type of prior personal knowledge required under Rule 701(b), making her testimony both admissible and helpful to the trier of fact. In its Order, the District Court evaluated Wendy's proffered insights into the Deed signature against Philip's evidence, making factual findings inappropriate for the summary judgment stage by weighing the credibility of the two perspectives on the signature on the Deed. Thus, a genuine dispute as to the material fact of the validity of the deed exists.

¶16 Moreover, the District Court incorrectly discounted Wendy's expert disclosure under M. R. Civ. P. 26. Wendy properly disclosed herself as an expert witness based on her lifelong personal knowledge of her father's handwriting. While Philip disputes the sufficiency of Wendy's expert disclosure, such challenges are appropriate for cross-examination rather than summary adjudication. *See Teeter v. Mid-Century Ins. Co.*, 2017 MT 292, ¶ 20, 389 Mont. 407, 406 P.3d 464 (holding foundational challenges to expert testimony should be addressed at trial through cross-examination, not summary judgment). Accordingly, genuine issues of material fact exist regarding the authenticity of

David's signature.  The resolution of these factual disputes is inherently within the province of the jury.

**CONCLUSION**

¶17     On both counts, Wendy met her burden to demonstrate a genuine dispute of material facts to defeat Philip's motion for summary judgment.  The District Court erred in granting Philip's motion for summary judgment because Wendy provided sufficient evidence to show the existence of a genuine issue of material fact exists as to the validity and enforceability of the Deed.  We therefore reverse the District Court's Order granting summary judgement to Philip and remand for further proceedings.

¶18     Reversed and remanded for further proceedings consistent with this Opinion.


/S/ LAURIE McKINNON


We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE


Chief Justice Cory J. Swanson, concurring and dissenting.

¶19     I dissent from the Opinion's reversal of summary judgment on the issue of undue influence.  The District Court correctly found Wendy Wolfe failed to present sufficient evidence to create a genuine issue of material fact on that issue.  I concur with the Opinion's reversal on the issue of fraud, because the Montana Rules of Evidence permit Wendy to testify regarding her knowledge of her father David Wolfe's handwriting.

¶20     To show undue influence, § 29-2-407, MCA, requires Wendy to prove her uncle

Philip Wolfe did one of three things:

> (1) Used his confidential relationship with David to obtain an unfair advantage,[1]
>
> (2) Took unfair advantage over David's weakness of mind; or
>
> (3) Took a grossly oppressive and unfair advantage over David's necessities or distress.

That means Wendy must prove (a) David was susceptible to undue influence, and (b) Philip

exerted undue influence over David. The statute created a sliding scale based on the type

of susceptibility. If there is authority or a confidential relationship, Philip must merely use

that relationship for an advantage. If there is a weakness of mind, Philip must take unfair

advantage of that weakness. But if Philip is only taking advantage over David's necessities

or distress, Philip must take a grossly oppressive and unfair advantage. When considering

whether undue influence occurred, the court may consider five factors outlined in ¶ 11 of

the Opinion. "These criteria are nonexclusive considerations available to guide the court

in its application of statutory requirements, and may or may not be present in any given

undue influence case." *In re Estate of Harmon*, 2011 MT 150, ¶ 20, 360 Mont. 150,

253 P.3d 821 (citation omitted).

¶21     "Undue influence is never presumed and must be proven like any other fact."

*In re Estate of Wittman*, 2001 MT 109, ¶ 14, 305 Mont. 290, 27 P.3d 35 (citing

*In re Estate of Lien*, 270 Mont. 295, 304, 892 P.2d 530, 535 (1995) (overruled, in part, on

---

[1] Specifically, (1) David must place confidence in Philip, or Philip must have apparent authority over David, and (2) Philip must use that confidence or authority for the purpose of obtaining an unfair advantage over David. *See* § 28-2-407(1), MCA.

11

other grounds)). "[M]ere opportunity to exercise undue influence on the testator is not sufficient to prove undue influence." *In re Estate of Harmon*, ¶ 21. Wendy is also "required to present admissible evidence of specific acts of undue influence sufficient to raise a genuine issue of material fact. General allegations of poor health are not sufficient to show undue influence." *In re Estate of Harmon*, ¶¶ 21–22.

¶22 The District Court granted summary judgment on undue influence because Wendy failed to show susceptibility. Wendy asserted David was susceptible to undue influence from Philip in three respects: David's broken hip, which occurred in 2017; David's alleged multiple strokes, for which Wendy was unable to provide medical records;[2] and Philip's payment of property taxes on the home, but Wendy failed to prove when the payment occurred.

¶23 Regarding the tax payment, Wendy argues it shows a confidential relationship between the brothers existed, but inconsistently argues the payment date is irrelevant. In so doing, she fails to assert facts showing the confidential relationship existed before the deed was signed in July 2018. If the payment occurred after the Testamentary deed was

---

[2] There is a complicated timeline of the case which led to Wendy's failure in securing some of her evidence. Two cases were filed separately and then combined, Wendy initially attempted to represent herself pro se, Philip moved for summary judgment in the first case, and after the cases were combined, the District Court granted a 90-day extension for Wendy to conclude discovery. After Wendy, as the plaintiff, concluded her discovery and disclosed her expert on the last day of her discovery period, Philip did not conduct any subsequent discovery into the expert. Likely, Wendy wanted to use the time Philip was given for his discovery to finalize the expert's report, but her time was cut short. Wendy sought another extension before filing her response to Philip's motion for summary judgment, as the expert needed additional time to fully conclude on the issue of the signature. The District Court denied the motion, concluding Wendy's failure to obtain the medical records and provide them for her expert's report was due to her own unwarranted delay.

signed, there would be no confidential relationship at the time of signing.[3]  Second, Wendy's failure to provide documentation for David's alleged stroke fails for the same reason.  She cannot show the stroke made David susceptible leading up to July 2018 because she did not show the stroke occurred prior to July 2018.  It should not be very difficult for Wendy to supply records of when the county received a tax payment on a property, or when David was hospitalized for a major medical event.  But absent that evidence, the District Court correctly concluded Wendy had a timing problem, and the only factor properly alleged toward susceptibility was David's broken hip suffered in 2017.

¶24   Wendy plausibly alleged David was susceptible to undue influence because he needed Philip's help to physically function.  But she failed to allege any actions Philip might have taken to exert a grossly oppressive and unfair advantage over David's necessities.  Absent some facts to show the second factor of undue influence, I would affirm the District Court's granting of summary judgment.

¶25   On the issue of fraud implicated through Wendy's offered testimony of her father's forged signature, the Majority correctly holds Wendy can testify as a lay witness regarding her father's signature under M. R. Evid. 701.  I write separately to explain *why*, as a lay witness, she is allowed to testify about a seemingly expert topic, based upon her prior knowledge of her father's handwriting.  "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only

---

[3] Wendy also fails to explain how the payment created a confidential relationship.

13

by specialists in the field." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (brackets, internal quotations, and citation omitted). Under M. R. Evid. 701,

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

¶26 The rule was amended in 1977. Prior to the 1977 revisions, the rule on lay witness testimony differed significantly. The 1977 version of Rule 701 "changes existing Montana law to the extent that it operates by allowing lay opinions to be admitted using two safeguards rather than having the traditional rule riddled with necessary exceptions and without any such safeguards." M. R. Evid. 701, *Annotations*, Comm'n Comments (1977). Historically, Montana caselaw allowed for admission of handwriting testimony from a layperson. *State v. Trueman*, 34 Mont. 249, 253, 85 P. 1024, 1025–26 (1906) ("all concede the admissibility of the opinions of nonprofessional men upon a great variety of unscientific questions arising every day, and in every judicial inquiry. These are questions of identity, handwriting . . . .") (citation omitted).

¶27 The pre-1977 rule required a lay witness to have familiarity with the handwriting before she can testify. Section 93-401-27, R.C.M. (1964). Rule 701 implicitly carries this requirement today under factor (b), the testimony is limited to that which is "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." M. R. Evid. 701.

> The purpose of Rule 701 is to allow opinion testimony where it would be of some value, and exclude it where it would prove a waste of time. A lay witness who lacks prior familiarity with a person's handwriting and forms an

14

opinion on it for the first time in preparation for testimony as a witness does not offer helpful testimony. Not only does such a witness fail in bringing to bear some previously gathered familiarity with the handwriting, but the jury is equally capable of making the same comparisons.

*United States v. Samet*, 466 F.3d 251, 255 (2d Cir. 2006) (citations omitted).

¶28 This distinguishes an expert from a lay witness testifying on handwriting: the layperson must have prior knowledge of the handwriting to be helpful. Wendy alleged extensive prior knowledge of David's signature; therefore, she qualifies as a layperson handwriting witness. This requirement is highlighted by our post-1977 amendment caselaw. *See, e.g., State v. Forsythe*, 2017 MT 61, ¶ 38, 387 Mont. 62, 390 P.3d 931 (Prohibiting testimony where the layperson witness "had no prior non-case-related familiarity with [the defendant's] handwriting").

¶29 Rule 901 reinforces the admissibility of layperson testimony about signatures, as it allows for a layperson to authenticate handwriting. M. R. Evid. 901(b)(1). The rule even allows authentication by introducing a second writing sample and letting the trier of fact authenticate a document. M. R. Evid. 901(b)(3). "Rule 701 lays out the general rule regarding lay witness opinion testimony, and Rule 901(b)(2) provides the specific rule when such testimony is used to authenticate or identify handwriting." *United States v. Harris*, 786 F.3d 443, 447 (6th Cir. 2015).

¶30 I concur with the Opinion holding Wendy's "personal knowledge of her father's signature qualifies her to testify to the validity of the signature on the Deed." Opinion, ¶ 15. The District Court erred by weighing the strength of Wendy's lay witness opinion versus the notary witness on summary judgment. Wendy was qualified and allowed to

testify that the signature of her father was a forgery. She therefore created a genuine issue of material fact and withstood summary judgment on her claim of fraud.

/S/ CORY J. SWANSON